## SHU-RA ALI *vs.* CITY OF BOSTON.

No. 01-P-997.

Suffolk. December 9, 2002. - June 30, 2003.

Present: CYPHER, KANTROWITZ, & COWIN, JJ.

Further appellate review granted, 440 Mass. 1103 (2003).

*Negligence,* Municipality. *Municipal Corporations,* Liability for tort. *Statute,* Construction. *Words,* "Recreational use."

In an action against a city alleging negligence in placing a closed gate without lights or other warning across a bicycle path in a municipal park, with which gate the plaintiff collided while bicycling at night from a store to his home, summary judgment was incorrectly allowed in favor of the city on the basis that the plaintiff's claim for ordinary negligence was barred by the provisions of G. L. c. 21, § 17C (the so-called "recreational use" statute), where a jury could have found that the plaintiff's use of the park at the time of the accident was not a recreational use. [441-444]

CIVIL ACTION commenced in the Superior Court Department on September 3, 1997.

The case was heard by *Carol S. Ball,* J., on a motion for summary judgment.

*Carol-Lynn M. Bear* for the plaintiff.

*Eve A. Piemonte Stacey,* Assistant Corporation Counsel, for the defendant.

COWIN, J. The plaintiff was injured when he rode into a closed gate while bicycling on a bicycle path in Franklin Park from a store to his home. He commenced an action against the city alleging negligence in placing the gate across the path without lights or other warning. Subsequently, he was permitted to amend his complaint to allege that the city's conduct was wilful, wanton or reckless. The city thereafter moved for summary judgment, asserting that (1) the plaintiff's claim for ordinary negligence was barred by the provisions of G. L. c. 21, § 17C

(the so-called "recreational use" statute)[1]; and (2) the evidence was insufficient to warrant a finding that any conduct of the city with respect to the gate descended to the level of wilful, wanton or reckless behavior. A Superior Court judge agreed with the city on both propositions, and the plaintiff appealed.[2] Mindful of the incongruities contained in the recreational use statute, see, e.g., *Forbush* v. *Lynn*, 35 Mass. App. Ct. 696, 702 (1994), we nevertheless conclude that the judge was not justified in treating the plaintiff's use of the bicycle path as "recreational" as matter of law. Application of the statute turns on the factual question whether the plaintiff was engaged in a recreational use of the property at the time he was injured, a question disputed by the parties. On this record, the issue should have been presented to a jury. Accordingly, we reverse the allowance of summary judgment in favor of the city. Thus, it is unnecessary to reach the question whether the evidence was sufficient to support a finding of wilful, wanton or reckless conduct.

1. *Material facts.* For purposes of the summary judgment proceeding, most of the facts were not disputed. Shortly before 6:00 P.M. on March 12, 1997, the plaintiff started home on his bicycle from a dollar store after buying tape for his bicycle handlebars. Having been hit by cars on a number of occasions, he often rode home through the park, as on this evening, because it was "the easiest way home . . . [and] [b]ecause . . . it keeps me away from traffic." As he made his way along the road within the park, he collided with a large metal gate that had been placed across the road. As a result of the collision, he was

---

[1]General Laws c. 21, § 17C, as it existed at the time of the plaintiff's accident, see St. 1972, c. 575, provided, in relevant part: "An owner of land who permits the public to use such land for recreational purposes without imposing a charge or fee therefor . . . shall not be liable to any member of the public who uses said land for the aforesaid purposes for injuries to person or property sustained by him while on said land in the absence of wilful, wanton or reckless conduct by such owner." The statute was subsequently amended by St. 1998, c. 268. See note 4, *infra*.

[2]The parties indulged in various procedural confrontations while in the Superior Court, and now seek to engage us with respect to those issues. None require extensive analysis. There was no abuse of discretion in allowing the plaintiff's motion to amend his complaint, the city's motion to continue the trial, or the city's motion for leave to file its motion for summary judgment late. Nor was it error for the judge to consider the plaintiff's late-filed opposition to the summary judgment motion.

thrown over the handlebars and rendered unconscious. He sustained a concussion, suffered lacerations to his face and body causing permanent scarring on his shoulder and arm, and lost two front teeth.

Franklin Park is owned and maintained by the city of Boston. The public is welcome to use the park free of any fees or charges. The road on which the plaintiff was injured is designated as "Playstead Road," and is a paved way running through the park that is used for bicycle and pedestrian traffic, as well as for emergency and maintenance vehicles. The city offered evidence showing that the gate had been installed approximately two months before the accident in order to discourage general use of the road by motor vehicles. The plaintiff claimed he used Playstead Road on an almost daily basis and maintained that he had never seen the gate before. The area surrounding the gate was unlit and there were no signs warning of the obstruction. The plaintiff does not own a car and either walks or uses his bicycle as his only means of transportation.

2. *Discussion.* The recreational use statute does not bar all ordinary negligence claims for injuries to persons or property against those[3] who make their lands available to the public free of charge. Were it the Legislature's purpose to extend a blanket immunity to such defendants with respect to events occurring on their property, it presumably would have said so. Rather, the Legislature crafted a provision that states that such a landowner "shall not be liable to any member of the public who uses said land for the aforesaid purposes." Prior to the 1998 amendment to § 17C, those aforesaid purposes were "recreational purposes." Thus, the statute logically related the protection from claims to the charitable impulse on the part of the landowner; in other words, if a landowner, without demanding compensation therefor, is willing to make his property available for the recreation of the public, he is protected from claims for ordinary negligence by those who use the property for that purpose. Claims by others, whether lawful users for other purposes, or trespassers, are governed by other common-law or

---

[3]The statute applies to municipalities as well as to private persons. See *Anderson* v. *Springfield*, 406 Mass. 632, 633-634 (1990).

statutory principles and are not affected by the provisions of § 17C.

We discern no change in this principle by virtue of the 1998 amendment.[4] Most obviously, the amendment expands from recreational purposes only to recreation and eight other categories of public concern the purposes for which landowners may make their property available to the public in return for protection from actions for ordinary negligence. The amendment also changes the reference to the person precluded from suit from "any member of the public who uses said land for the aforesaid purposes" (i.e., recreational purposes) to "such members of the public" (embracing those persons who use the property for any of the now nine categories of activities). We have no difficulty in concluding that the phrase "such members of the public" is intended to refer to persons who make use of the land for one or more of the enumerated purposes; it does not impose a prohibition on those who come on the property for other reasons. In this regard, the new version of the statute is consistent with the meaning that we ascribe to the earlier version applicable to this case.

The city argues that it has met the three conditions that must be satisfied in order to obtain the protection of the statute: specifically, that it owns the land; it allows the public to use the land for recreational purposes; and it assesses no charge for such use. These propositions are factually accurate, but they ignore an essential feature of the statute. "It is not the nature or quality of the land or the uses to which it is put by its owners, but the nature of the use the public makes of it, i.e., recreational activity, that determines the applicability of G. L. c. 21, § 17C." *Forbush* v. *Lynn, supra* at 702 n.10. The statute does not confer blanket immunity on all who make their property available without charge to the public for recreation. It provides im-

---

[4]By St. 1998, c. 268, G. L. c. 21, § 17C, was amended to provide, in relevant part, as follows: "Any person having an interest in land . . . who lawfully permits the public to use such land for recreational, conservation, scientific, educational, environmental, ecological, research, religious, or charitable purposes without imposing a charge or fee therefor . . . shall not be liable for personal injuries or property damage sustained by such members of the public . . . while on said land in the absence of wilful, wanton, or reckless conduct by such person."

munity only with respect to claims asserted by plaintiffs who actually use the property for that purpose at the time that such claims arise.

The judge construed the statute correctly in this regard, and accordingly focused on the question whether the plaintiff was engaged in a recreational use of the park at the time of his accident. She concluded that the plaintiff's use of the park at that time was indisputably a recreational use, and that consequently the city was entitled to judgment on the plaintiff's ordinary negligence claim. See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). We do not perceive the character of the plaintiff's use of the park as being so clear. In making this judgment, we do not rely exclusively on the plaintiff's stated purpose, but rather on what a fact finder could justifiably determine from the evidence was the plaintiff's reason for being on the bicycle path.

Our review of the materials submitted in connection with the city's motion for summary judgment discloses at a minimum a genuine dispute regarding the nature of the plaintiff's use of the property. A finding that he was on the bicycle path for the purpose of transportation, not recreation, would have been warranted. There is a difference between use of a bicycle as a means of transportation and use of a bicycle for recreation. See, e.g., *Opinion of the Justices*, 370 Mass. 895, 897 (1976), advising that use of gasoline excise tax revenue, dedicated to highways and mass transit by art. 78 of the Amendments to the Massachusetts Constitution, as amended by art. 104 of the Amendments, "to construct bikeways and bicycle parking facilities for use by commuting bicyclists (those using a bicycle as a means of transportation rather than recreation) thereby providing a safe and convenient alternative to travel by motor vehicle, and, in addition, thereby increasing the safety of our highways for motor vehicles," would not violate art. 78. See also G. L. c. 90E, §§ 1-3 (establishing means for the construction of bikeways for commuter or recreational use). Here, there was evidence that the plaintiff, who did not own a car, customarily used a bicycle for transportation and regularly made his way through the park as a means of traveling from one location to another. On the date in question, the plaintiff made use of the

bicycle path to return to his home from a store. That this travel took place in the dark is further support for a finding that the use, at least at that time, was not recreational. Nor did the use become recreational because the plaintiff considered the park to be safer than the street traffic. Suffice it to say, a jury could have found that the plaintiff's use of the park at the time of the accident was not a recreational use, thereby precluding summary judgment.

*Catanzarite* v. *Springfield*, 32 Mass. App. Ct. 967 (1992), is not in conflict. In *Catanzarite*, we rejected the plaintiffs' proposition that the viewing of dinosaur tracks in a public park was not a recreational use for purposes of G. L. c. 21, § 17C, concluding that the subject of recreation encompassed passive, as well as active, pursuits. That case adjudicated a dispute whether a particular activity constituted recreation. It has no bearing on the present case, wherein the plaintiff was engaged in an activity that could be recreational or could be nonrecreational, and a fact finder must determine the nature of the use at the time of the event.

Our interpretation of the statute is supported by other jurisdictions that have interpreted similar provisions. See *Domingue* v. *Presley of S. Cal.*, 197 Cal. App. 3d 1060, 1065 (1988) ("[t]he mere fact that the minor appellant was riding his bicycle to his friend's house does not make his trip across respondent's land . . . a recreational use"); *Lauber* v. *Narbut*, 178 N.J. Super. 591 (1981) (focusing the inquiry on the nature of the activity the plaintiff engaged in while on the property); *Auman* v. *School Dist. of Stanley-Boyd*, 248 Wis. 2d 548, 559 (2001) (recognizing that "each recreational immunity case poses an intensely fact-driven inquiry").

A jury could have found that the plaintiff was not engaged in a recreational use of the bicycle path at the time of the accident. If so, the city is not protected under G. L. c. 21, § 17C.[5]

*Judgment reversed.*

---

[5]The city also argues on appeal that it was immune under G. L. c. 258, § 10(*b*), because the installation of the gate was an exercise of a discretionary function. To the extent the city seeks to raise the defense for the first time on appeal, we decline to reach the issue. See *Demoulas* v. *Demoulas*, 432 Mass. 43, 65 (2000).