## Shu-Ra Ali *vs.* City of Boston.

Suffolk. December 4, 2003. - March 15, 2004.

Present: Marshall, C.J., Greaney, Ireland, Spina, Sosman, & Cordy, JJ.

*Negligence,* One owning or controlling real estate, Municipality. *Municipal Corporations,* Liability for tort. *Statute,* Construction. *Wilful, Wanton, or Reckless Conduct. Words,* "Recreational use."

Discussion of the origin of G. L. c. 21, § 17C, which bars a recreational user's claim for ordinary negligence against a landowner who has opened his land to the public for recreational purposes, and the unrelated modification of the common law eliminating invitees as a separate category of entrants onto land. [235-237]

A Superior Court judge properly determined that G. L. c. 21, § 17C, barred the negligence claim of a person injured while riding his bicycle through a municipal park on the way home from a store, where the plaintiff's contention that his subjective intent of only traveling through the park (rather than engaging in a recreational activity) should govern whether he came within the statute's ambit would undermine the purpose of the statute, which was to encourage landowners to permit broad, public, free use of land for recreational purposes by limiting their obligations to lawful visitors under the common law. [237-238]

A city's conduct in erecting a gate in a park without lights, signs, or other warnings did not warrant a finding of wilful, wanton, or reckless conduct. [238-239]

Civil action commenced in the Superior Court Department on September 3, 1997.

The case was heard by *Carol S. Ball*, J., on a motion for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Sonia L. Skinner*, Assistant Corporation Counsel, for the defendant.

*Bruce R. Taub* for the plaintiff.

Marshall, C.J. In the early evening of March 12, 1997, while riding his bicycle through Franklin Park in the Roxbury section of Boston on the way home from a store, the plaintiff, Shu-Ra

Ali, collided with a park gate and suffered injuries. He argues that, because he was injured while using the park for a nonrecreational purpose (that is, to ride home from the store), he falls outside the purview of the recreational use statute, G. L. c. 21, § 17C, which bars a recreational user's claim for ordinary negligence against a landowner who has opened his land to the public for "recreational purposes."[1] A judge in the Superior Court entered summary judgment for the defendant, the city of Boston (city), concluding that the negligence claim was barred by G. L. c. 21, § 17C, and that there was insufficient evidence to warrant a finding that the city's conduct was wilful, wanton, or reckless. The plaintiff appealed, and the Appeals Court reversed, holding that a jury could have found that the plaintiff was not engaged in a recreational activity, in which case the statute would not apply.[2] Ali v. Boston, 58 Mass. App. Ct. 439, 440, 444 (2003). We granted the city's application for further appellate review, and now affirm the judgment of the Superior Court.

1. Facts. We summarize the relevant facts in the light most favorable to the plaintiff. See Remy v. MacDonald, 440 Mass. 675, 676 (2004). Franklin Park is owned and maintained by the city and is open to the public free of charge. The park contains a paved bicycle path called "Playstead Road" running through its northern corner.[3] Just before 6 P.M. on March 12, 1997, the plaintiff was riding his bicycle on Playstead Road on his way home from making a purchase at a store. The plaintiff testified

---

[1]At the time of the plaintiff's accident, G. L. c. 21, § 17C, as amended by St. 1991, c. 372, provided in relevant part: "An owner of land who permits the public to use such land for recreational purposes without imposing a charge or fee therefor . . . shall not be liable to any member of the public who uses said land for the aforesaid purposes for injuries to person or property sustained by him while on said land in the absence of wilful, wanton or reckless conduct by such owner . . . ." The statute was rewritten in 1998. St. 1998, c. 268.

[2]In response to several procedural points raised, the Appeals Court also held there was no abuse of discretion in allowing the plaintiff's motion to amend his complaint, the city's motion to continue the trial, or the city's motion for leave to file its motion for summary judgment late. The Appeals Court also found no error in the judge considering the plaintiff's late opposition to the summary judgment motion. Ali v. Boston, 58 Mass. App. Ct. 439, 440 n.2 (2003). We agree.

[3]The path is open to bicycle and pedestrian traffic, and is also used for emergency and maintenance vehicles.

at his deposition that he chose the route through the park because it was "the easiest way home" and because "it keeps me away from the traffic." While riding on Playstead Road, he collided with a large metal gate blocking the middle of the path. The impact threw him over the handlebars and rendered him temporarily unconscious. He sustained a concussion, suffered lacerations to his face and body that caused permanent scarring on his shoulder and arm, and lost two front teeth. The plaintiff testified that he had used the bicycle path every day and had never before seen the gate, although he had noticed similar gates in other parts of the park.

The city maintained that the gate was installed approximately two months before the accident to discourage unauthorized motor vehicles from using the path. The gate spans the middle of the path, leaving unobstructed spaces of approximately three feet on either side for pedestrians and bicyclists to pass around it. At the time of the accident, the area surrounding the gate was unlit, and there were no signs warning of the gate's presence.

2. *Application of G. L. c. 21, § 17C.* The plaintiff does not, nor could he, dispute that the city is "[a]n owner of land who permits the public to use such land for recreational purposes without imposing a charge or fee therefor . . . ." G. L. c. 21, § 17C. See *Anderson* v. *Springfield,* 406 Mass. 632, 634 (1990) (government entities are protected by recreational use statute to same extent as private landowners). See also note 7, *infra.* Rather, he argues that, because he was not riding through the park for pleasure when he was injured, the city owes him a higher duty of care than it would owe to a bicyclist in the same park, on the same bike path, who was injured while in the park to enjoy himself. A review of the public policy and common-law contexts from which our recreational use statute arose belies the plaintiff's argument.

The origin of the public use statute apparently resides in a 1967 report by the Legislative Research Council to the Legislature.[4] 1967 Senate Doc. No. 1136. The report stated that the general public was increasingly pursuing "participant

[4]This study, entitled "Public Recreation on Private Lands and Landowners' Liability," was ordered by the House of Representatives and Senate and directed the Legislative Research Council "to investigate and study the subject

forms" of outdoor recreation (e.g., boating, camping, and hiking), creating a need for more land than was then available for public recreational use. *Id.* at 15-16. It noted that, although the State and local governments were in the process of acquiring more land for recreational purposes, policymakers believed that the need for additional space would not be met unless private landowners were persuaded to open their land to the recreating public. *Id.* at 16. Some private landowners interested in permitting public recreation on their property, however, were fearful that they would incur liability for injured recreationalists. *Id.* Corporations in particular were concerned that, if they made their land available for public recreation, courts might conclude that they did so to enhance their own interests, and might consequently determine that the recreational users were "invitees" under the common law, to whom landowners owed the highest duty of care.[5] *Id.* at 26. In 1972, seeking to strike a balance between encouraging public access to private land and protecting landowners from liability for injuries, the Legislature created by statute a new category of entrants onto land,

matter of [two draft bills] to encourage landowners to make land and water areas available to the public by limiting liability in connection therewith." 1967 Senate Doc. No. 1136, at 2. Four years later, the House of Representatives and Senate directed the Department of Natural Resources "to make an investigation and study of the problem of public recreation on private, county and municipal lands as specifically relates to the problem of landowners' liability." 1971 House Doc. No. 5004, at 4. This report recommended that the Legislature adopt a statute limiting landowner liability to encourage private landowners to open their property to the public for recreational use. 1971 House Doc. No. 5004, at 12.

[5] At that time, the common law distinguished entrants onto land, for purposes of landowner liability, according to three categories: invitees, licensees, and trespassers. *Mounsey* v. *Ellard*, 363 Mass. 693, 695 (1973). To invitees, landowners owed a duty of reasonable care. *Wilson* v. *Norumbega Park Co.*, 275 Mass. 422, 424 (1931). Injured licensees or trespassers, however, could not recover unless the landowner's conduct was wilful, wanton, or reckless. *McIntyre* v. *Converse*, 238 Mass. 592, 594 (1921). Ordinarily, members of the public permitted to enter land for recreational activities were deemed mere licensees. See *Karlowski* v. *Kissock*, 275 Mass. 180, 183 (1931). Licensees, however, assumed the status of invitees if it was determined that they had conferred a benefit on the landowner. See *Mounsey* v. *Ellard*, *supra* at 705. For example, in *Rollins* v. *Marengo*, 354 Mass. 765 (1968), a social visitor in the defendants' home (ordinarily a mere licensee) became an invitee for purposes of liability when she agreed to serve as godmother to the defendant parents' child.

recreational users. See 1972 House Doc. No. 5668, at 2.[6] The statute limited landowners' liability to recreational users by precluding them from making claims for injuries in the absence of "wilful, wanton or reckless conduct" by the landowner.[7] *Id.*

Subsequently, in 1973, and for reasons wholly unrelated to the recreational use statute, this court modified the common law by, among other things, eliminating "invitees" as a separate category of entrants onto land. *Mounsey* v. *Ellard,* 363 Mass. 693, 707 (1973). We determined that, for purposes of landowner liability, entrants onto land would fall into one of two categories: lawful visitors and trespassers. *Id.* Landowners now owe a reasonable duty of care to all lawful visitors. *McDonald* v. *Consolidated Rail Corp.,* 399 Mass. 25, 28 (1987). As to trespassers, landowners continue to owe the duty only to refrain from wilful, wanton, or reckless disregard for their safety. *Id.* at 27.

Since our decision in the *Mounsey* case, the Legislature has made minor amendments to the recreational use statute, see St. 1991, c. 372, and St. 1998, c. 268, but it has not altered the duty of care under that law. Therefore, for purposes of landowner liability, while recreational users fall into the category of "lawful visitors" under the common law, by statute they comprise a discrete subgroup of lawful visitors owed only the standard of care applicable to trespassers: that is, landowners must refrain from wilful, wanton, or reckless conduct as to their safety. See G. L. c. 21, § 17C.

Here, the city permits the public to enter Franklin Park without charge to partake in recreational activities, such as

[6]The bill was entitled "An Act encouraging landowners to make land available to the public for recreational purposes by limiting liability in connection with such use." 1972 House Doc. No. 5668, at 2. Although the statute as enacted in 1972 was amended before the plaintiff's accident in 1997, the provisions relevant here, see note 1, *supra,* remained unchanged.

[7]Government landowners that provide free access to their land for public recreation have been protected by G. L. c. 21, § 17C, to the same extent as private landowners since the passage of the Massachusetts Tort Claims Act in 1978. G. L. c. 258, § 2 (government entities "shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances"). See *Anderson* v. *Springfield,* 406 Mass. 632, 634 (1990).

walking, bicycling, or picnicking.[8] Members of the public who enter the park to engage in such activities are therefore lawfully in the park as recreational users. The fact finder, therefore, need only determine whether the plaintiff is permitted to be in the park because he is engaged in an objectively recreational activity. The plaintiff, having entered the park on his bicycle, was clearly engaged in an objectively recreational activity, and is therefore a recreational user limited by the provisions of the statute. See *Schneider* v. *United States, Acadia Nat'l Park*, 760 F.2d 366, 368 (1st Cir. 1985).

The plaintiff's contention that his subjective intent should govern the issue of landowner liability is illogical, for he "would have it that a greater duty is owed to those for whom the Park is not maintained than to those for whom it is." *Id.* Under the plaintiff's analysis, a student studying for an examination in the park or a financial analyst reading a client letter while eating lunch in the park would fall outside the scope of the statute. Such a contrary interpretation of the recreational use statute would undermine the very purpose of the statute: to encourage landowners to permit broad, public, free use of land for recreational purposes by limiting their obligations to lawful visitors under the common law. See 1972 House Doc. No. 5668, at 2. To condition a landowner's liability on the recreational user's subjective intent would only invite mischief and deceit. It matters not that the plaintiff's purpose was transportation, or that the student's purpose is to learn, or that the financial analyst's purpose is to work. What matters is that they are engaging in recreational pursuits permitted in the park.

3. *Wilful, wanton, or reckless conduct.* The plaintiff argues in the alternative that the city's conduct in erecting the gate without lights, signs, or other warnings constituted wilful, wanton, or reckless conduct. Wilful, wanton, or reckless conduct "involves an intentional or unreasonable disregard of a risk that presents a

---

[8]Certainly a landowner may limit the types of recreational activities that are permitted on the land. See *Inferrera* v. *Sudbury*, 31 Mass. App. Ct. 96, 98-99 (1991) (landowner permitted skiing and walking but not snowmobiling). For our purposes here, it does not matter precisely what limitations the city may have placed on recreational activities in Franklin Park. That the city considered bicycling a permissible recreational activity is clear from its provision of bicycle paths throughout the park.

high degree of probability that substantial harm will result to another. . . . The risk of death or grave bodily injury must be known or reasonably apparent, and the harm must be a probable consequence of the defendant's election to run that risk or of his failure reasonably to recognize it." (Citation omitted.) *Sandler* v. *Commonwealth*, 419 Mass. 334, 336 (1995). The city's conduct here does not warrant a finding of such conduct. Certainly the construction of a gate across any pathway presents some risk that a passerby will fail to see it and injure himself. In this case, the addition of lights or warning signs might have been a reasonable response to the potential risk posed by the gate. Nonetheless, gates are commonly used in public parks to restrict the flow of pedestrian and vehicular traffic, and there was no evidence that other areas of Franklin Park, an open space, were well lit at night. Therefore, we cannot say that the city acted recklessly in expecting that the public would take particular care in navigating after dark on roads in a park that, as the plaintiff well knew, contained traffic gates.

4. *Conclusion.* For the reasons stated above, we affirm the Superior Court judge's grant of summary judgment for the city.

*So ordered.*