DEBORAH SEAN DUNN[1] *vs*. CITY OF BOSTON.

No. 07-P-1833.

Suffolk. October 7, 2008. - October 26, 2009.

Present: LENK, KAFKER, & RUBIN, JJ.

*Statute,* Construction. *Massachusetts Tort Claims Act. Negligence,* Municipality. *Municipal Corporations,* Liability for tort. *Words,* "Recreational user."

In an action brought under the Massachusetts Tort Claims Act, G. L. c. 258, and G. L. c. 84, § 15, in which the plaintiff alleged that the city of Boston (city) was negligent in failing to repair the stairs at City Hall Plaza (plaza) upon which the plaintiff fell, the judge properly granted summary judgment in favor of the city on the ground that G. L. c. 21, § 17C, the "recreational use statute" (statute), operated to immunize the city from the plaintiff's claim, where, disregarding the plaintiff's subjective purpose for entering and walking around the plaza (i.e., to plan for an upcoming event to be held there by her employer), the plaintiff was, within the meaning of the statute, a "recreational user" to whom the city was not liable for ordinary negligence [558-561]; where the plaintiff could not demonstrate that the city had charged her employer a fee for the use of the plaza, such as would render the statute inapplicable [561-562]; and where the plaintiff waived the contention that the city's failure to repair the stairs due to budgetary constraints amounted to wilful, wanton, or reckless conduct [562].

CIVIL ACTION commenced in the Superior Court Department on March 22, 2004.

The case was heard by *Margot Botsford,* J., on a motion for summary judgment.

*J. Michael Conley* for the plaintiff.

*Elizabeth L. Bostwick,* Assistant Corporation Counsel, for the defendant.

LENK, J. The plaintiff, injured while walking on the stairs at Boston's City Hall Plaza (plaza), filed an action under the Massachusetts Tort Claims Act, G. L. c. 258, and G. L. c. 84, § 15, alleging the city of Boston (city) was negligent in failing to

---

[1]Formerly known as Deborah Condon.

repair the stairs upon which she fell. The city's subsequent motion for summary judgment was granted, as the Superior Court judge concluded that G. L. c. 21, § 17C,[2] (hereafter referred to as the "recreational use statute" or simply "the statute"), operated to immunize the city from the plaintiff's negligence claim. The plaintiff now appeals, claiming the judge erred in granting summary judgment for the defendant city because (1) the plaintiff was not a member of the public using the plaza for any of the triggering purposes set out in the recreational use statute, (2) the plaintiff's employer had been charged a fee for her use of the plaza, making that statute inapplicable, and (3) the city's failure to repair the steps at the plaza was wilful, wanton, or reckless conduct. We affirm.

1. *Background.* In the light most favorable to the plaintiff, *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991), the relevant facts are as follows. During daylight hours on September 8, 2001, the plaintiff was walking with friends around the plaza, an outdoor area under the custody and control of the city,[3] and open to the public free of charge. The plaintiff's stated purpose for visiting the plaza was to view the site in order to plan for an upcoming event being sponsored in part by her employer, Gateway Christian Fellowship. Known as "The Call New England," the event was to be a day-long gathering of young people focused on group prayer, religious speakers, and music. The city issued a one-time entertainment license for the

---

[2]At the time of the plaintiff's accident, G. L. c. 21, § 17C, as appearing in St. 1998, c. 268, read in relevant part:

"(*a*) Any person having an interest in land . . . who lawfully permits the public to use such land for recreational, conservation, scientific, educational, environmental, ecological, research, religious, or charitable purposes without imposing a charge or fee therefor . . . shall not be liable for personal injuries or property damage sustained by such members of the public . . . while on said land in the absence of wilful, wanton, or reckless conduct by such person. Such permission shall not confer upon any member of the public using said land . . . the status of an invitee or licensee to whom any duty would be owed by said person."

Section 17C was subsequently amended, in respects not here material, by St. 2008, c. 513, § 1, 2, effective April 14, 2009.

[3]City Hall Plaza is owned by the Boston Redevelopment Authority. There is no contention made in this case that G. L. c. 21, § 17C, is inapplicable based on the nature of the city's interest in the land. See G. L. c. 21, § 17(*b*).

event. The city did not purport to charge a "fee" in exchange for this license, although Gateway Christian Fellowship did make a $10,000 donation to the Boston Neighborhood Fund in connection with the event and reimbursed the city for the necessary security and janitorial services.[4]

While ascending the brick stairs at the plaza on the day in question, near the lower fountain area at the corner of the plaza, the plaintiff fell and suffered a complex fracture of her wrist. The city had no notice that the plaintiff would be visiting the plaza on that particular day. The city admits the stairs were crumbling and in need of repair.

2. *Application of the recreational use statute.* It is undisputed that the plaza is open to members of the public for recreational purposes free of charge, and that the city, a governmental entity, can claim protection under the recreational use statute to the same extent as a private landowner. See *Anderson* v. *Springfield,* 406 Mass. 632, 634 (1990). In order to determine whether the city is immune from the plaintiff's negligence claim under the recreational use statute, we must first determine whether the plaintiff was a "recreational user"[5] within the meaning of that statute, i.e., whether she belonged to the "discrete subgroup of lawful visitors owed only the standard of care applicable to trespassers." *Ali* v. *Boston,* 441 Mass. 233, 237 (2004).

a. *Nature of plaintiff's activities.* The plaintiff agrees that attendees of The Call New England event would be recreational users under the relevant statute (members of the public entering the plaza free of charge for recreational purposes) and that the city would therefore be liable to those attendees only for its wilful, wanton or reckless conduct, not for its ordinary negligence. See G. L. c. 21, § 17C(*a*). However, the plaintiff argues that because

---

[4]Based on the materials before us, there is some question whether the evidence contained in the summary judgment record would be sufficient to warrant a finding that Gateway Christian Fellowship was the organization that made the donation and reimbursement payments to the city. Nevertheless, the city appears to acknowledge in its brief that Gateway Christian Fellowship made these payments, and we assume for purposes of this opinion that it did.

[5]For simplicity's sake, the term "recreational" will encompass all the triggering purposes for which land use is permitted under the statute that are relevant to the case at bar, most importantly, "recreational," "charitable," and "religious" purposes.

she was visiting the plaza to plan for a city-sanctioned event in connection with her employment with the Gateway Christian Fellowship, she was a "business visitor" to whom the city owed a higher duty than it would to a recreational user. We disagree and conclude that the plaintiff was a recreational user within the meaning of the statute, as interpreted by *Ali, supra.*

In *Ali,* the plaintiff was riding his bicycle through a city-owned park, on his way home from a store, when he collided with a gate and was injured. The plaintiff sued for negligence, and, based on the city's immunity under the recreational use statute, summary judgment entered for the defendant city. *Ali, supra* at 234. The plaintiff in *Ali* appealed, arguing that because his purpose in bicycling through the park was to travel home from the store, a nonrecreational purpose in his view, the recreational use statute should not apply. *Ibid.* The Supreme Judicial Court, however, refused to consider the plaintiff's subjective intent "to travel" when assessing his status as a recreational user, for to do so "would only invite mischief and deceit" and undermine the statute's purpose of encouraging landowners to permit free use of their land by limiting the duty of care owed to many entrants. *Id.* at 238.

Instead, the court in *Ali* instructed fact finders to disregard "the recreational user's subjective intent," whether it be a traveler's purpose of transport, a student's purpose to learn, or a financial analyst's purpose to work, and instead to "determine whether the plaintiff is permitted to be in the park because he is engaged in an objectively recreational [or charitable or religious] activity." *Ibid.,* citing *Schneider* v. *United States, Acadia Natl. Park,* 760 F.2d 366, 368 (1st Cir. 1985). In *Ali,* there were no objective factors present to suggest that the cycling plaintiff was "permitted to be in the park" for reasons other than recreation, and the court in *Ali* therefore upheld summary judgment for the city under the recreational use statute. See *Ali, supra* at 238-239.

Hewing to the teachings of *Ali,* we disregard the plaintiff's subjective purpose for entering and walking around the plaza (to do work for her employer). Instead, we look to the objective circumstances surrounding her entry and subsequent activities to determine whether she was a recreational user of the plaza, or some other sort of lawful entrant. We consider whether the plaintiff's permission to enter the plaza and walk there derives

from her use of land for a recreational purpose on land permitting such use, or from some nontriggering purpose consistent with a different relationship with the landowner. See *id.* at 238 ("Members of the public who enter the park to engage in [recreational, charitable, or religious] activities are therefore lawfully in the park as recreational users").

Here, the plaintiff entered the plaza in connection with the objectively charitable, religious, and recreational activity of planning for The Call New England event (which in this instance involved walking around the plaza to view it, but just as easily could have involved putting up signs, taking measurements, and like activities). She was not there by appointment with a city official nor does the record disclose any objective circumstances suggesting that she entered the plaza in order to conduct business with the city. The lawfulness of her entry and time spent on the plaza stemmed from her status as a recreational user: she had no other special permission or authorization from the city to be on the plaza that day, or any other day. See *Schneider* v. *United States, Acadia Natl. Park, supra* at 368 ("[I]f plaintiff's presence fell outside the recreational permission she would have to prove some other authorization or she would be a mere trespasser"). Compare *Alter* v. *Newton,* 35 Mass. App. Ct. 142, 149 (1993) ("[T]he plaintiff was not just a member of the public, but was . . . a student to whom [the city] owed a duty of care"), with *Seich* v. *Canton,* 426 Mass. 84, 85-86 (1997) (spectator at sporting event was lawfully permitted on premises only in her capacity as member of public engaged in recreation).

The plaintiff was not, for instance, a masonry contractor commissioned by the city to address the plaza's refurbishing. Such a person's actions might look similar to the plaintiff's (walking around the plaza to view it), but the objective circumstances surrounding the contractor's presence on the plaza[6] would show that his permission to enter and remain on the plaza derived not from the recreational use statute, but from the business arrangement

---

[6]Because circumstances such as these could be proved by documents, contracts, and testimony by officials involved in the contractor's hire (not simply the contractor's subjective intent), the potential for "mischief and deceit" that concerned the *Ali* court is not of significance. *Ali,* 441 Mass. at 238.

with the city conferring certain benefits upon each. The contractor would be the kind of lawful entrant to whom the city owed a higher duty of care than a trespasser or recreational user.

In the plaintiff's case, there are no such special circumstances. The city had given the plaintiff's employer permission to use the plaza free of charge for The Call New England event, rendering the plaintiff no less a beneficiary of the city's generosity than an attendee of the free event would be. See *Hendrickson* v. *Georgia Power Co.*, 80 F. Supp. 2d 1374, 1378 (M.D. Ga. 2000) ("The quid pro quo for an owner's agreement to make land available at no charge is that he or she will then receive limited tort immunity for any injuries that occur on the property"), aff'd, 240 F.3d 966 (11th Cir. 2001). To place the plaintiff in a separate category from the attendees of the event she was planning, simply because the plaintiff was being paid by a third party to be there and therefore subjectively viewed her activities as "work," would be antithetical to the Legislature's stated purpose of "encouraging landowners to make land available to the public for recreational purposes." 1972 House Doc. No. 5668, at 2.

b. *The fee for use.* The plaintiff next alleges that it was error to grant the city immunity under the recreational use statute, because her employer did indeed pay a "fee" for use of the plaza, in the form of the cost for security and janitorial services and the $10,000 donation to the Boston Neighborhood Fund. First, the plaintiff produced no evidence to suggest that the Gateway Christian Fellowship's donation to the Boston Neighborhood Fund was a condition of receiving the license, such that it could be characterized as a "charge or fee." See *Whooley* v. *Commonwealth*, 57 Mass. App. Ct. 909, 910 (2003) ("the plaintiff introduced no evidence that the group actually paid for the use of the [hockey] rink" where plaintiff was injured). On the contrary, the director of the mayor of Boston's office of consumer affairs and licensing signed an affidavit indicating that her office "did not receive any payment for this license." Second, money paid by Gateway Christian Fellowship to the city for security and janitorial services is properly categorized as a reimbursement, rather than a "charge or fee" within the meaning of the statute. See *Seich* v. *Canton*, 426 Mass. at 86 (registration fee for basketball league "used to pay custodians to open the town's property

after hours is not the equivalent of the town imposing a fee for the use of its land for recreational purposes").

3. *Wilful, wanton, or reckless conduct.* In her opposition to the city's motion for summary judgment, the plaintiff did not contend that the city's failure to repair the steps at the plaza amounted to wilful, wanton, or reckless conduct. Thus, the plaintiff has waived the issue of the city's alleged reckless conduct, and it is not properly before us. *Zielinski* v. *Connecticut Valley Sanitary Waste Disposal, Inc.,* 70 Mass. App. Ct. 326, 335-336 (2007) ("The issue, not having been raised in the plaintiffs' complaint nor presented for adjudication to the judge by the parties, will be deemed waived").

Even if we were to consider the issue of the city's potential reckless conduct, it would offer the plaintiff no relief. To have acted recklessly, the city would have had to have intentionally or unreasonably ignored a "high degree of probability that substantial harm will result to another." *Sandler* v. *Commonwealth,* 419 Mass. 334, 336 (1995). In *Sandler,* even the landowner's having left a deep drain uncovered on a bikeway did not amount to wilful, wanton, or reckless conduct. *Id.* at 338. On the limited record before us, it does not appear that the failure to repair the crumbling steps due to budgetary constraints is the kind of action or inaction that could be characterized as wilful, wanton, or reckless.

*Conclusion.* Viewing the undisputed facts in the light most favorable to the plaintiff, we conclude that the city is entitled to immunity from the plaintiff's negligence claim under the recreational use statute, G. L. c. 21, § 17C. Further, the plaintiff having waived any claim that the city's action or inaction in failing to repair the steps at the plaza was wilful, wanton, or reckless conduct, we discern no error in the entry of summary judgment for the defendant city.

*Judgment affirmed.*