## Edward Marcus *vs.* City of Newton.

Middlesex. January 4, 2012. - May 7, 2012.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Practice, Civil,* Summary judgment, Interlocutory appeal, Execution. *Governmental Immunity. Municipal Corporations,* Governmental immunity. *Negligence,* Governmental immunity.

In a civil action involving the recreational use statute, a city was not entitled under the doctrine of present execution to appeal immediately an interlocutory order denying its motion for summary judgment, where the plain text of the statute did not provide immunity from suit but only an exemption from liability for ordinary negligence. [151-153]

In a civil action arising from injuries that the plaintiff sustained while playing softball on a public field owned by the defendant city, the judge properly denied the city's motion for summary judgment, where, in the circumstances (i.e., the city imposed a fee or charge on the entity that organized the softball league in which the plaintiff participated for the exclusive use of the field during reserved blocks of time; the entity paid the fee on behalf of its league players, including the plaintiff; and the plaintiff was injured while playing a game on the field during one of the reserved blocks of time), the city did not qualify, as a matter of law, for an exemption from liability for ordinary negligence under the recreational use statute, G. L. c. 21, § 17C, given that the plaintiff was not participating in a recreational use of the city's property free of charge [153-155], and given that there was no evidence in the summary judgment record that the fee charged was used to reimburse the city for marginal costs that it would not have incurred but for the league's particular use of the field during those reserved blocks of time [156-157].

Civil action commenced in the Superior Court Department on July 2, 2009.

A motion for partial summary judgment was heard by *Bonnie H. MacLeod-Mancuso*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Maura E. O'Keefe,* Assistant City Solicitor, for the defendant.

*Joan S. Amon* for the plaintiff.

*John J. Davis, Michael Leedberg, & Thomas J. Urbelis,* for

City Solicitors and Town Counsel Association, amicus curiae, submitted a brief.

*Andrew M. Abraham, J. Michael Conley, Thomas J. Carey, Jr., & Thomas R. Murphy,* for Massachusetts Academy of Trial Attorneys, amicus curiae, submitted a brief.

BOTSFORD, J. Edward Marcus was injured during a softball game on a public field owned by the city of Newton (city). We consider the city's appeal,[1] which we transferred from the Appeals Court on our own motion, from the denial of its motion for summary judgment, based on the ground that it was immune from suit pursuant to the recreational use statute, G. L. c. 21, § 17C. The city argues that the judge erred in denying its motion, and that it is entitled to immediate appellate review of the denial under the doctrine of present execution. Although we hold that the doctrine does not apply in the circumstances of this case, we nonetheless consider the merits of the city's appeal, and conclude the denial of its motion for summary judgment was appropriate.[2]

1. *Background.* a. *Facts.* In the summer of 2007, Marcus participated in a softball league organized by an organization called "Coed Jewish Sports." Marcus joined the league after mailing an application and an eighty dollar registration fee to the organization. Payment of the registration fee entitled Marcus to participate in the league, receive a team T-shirt, and attend a cookout hosted by the league at the end of the season.

A payment of $1,200 by Coed Jewish Sports to the city's parks and recreation department secured the league a permit. The permit in turn reserved for the league the use of McGrath Field, a property owned and maintained by the city, for eight two-hour blocks between June and August, 2007. Marcus had no knowledge of or participation in the permit application process undertaken by Coed Jewish Sports, and never applied directly to the city for any such permit. According to the city, the $1,200 payment was used to defray approximately $12,000 in annual maintenance and administrative costs that it incurred

---

[1]There are other defendants that are not parties to this appeal.

[2]We acknowledge the amicus briefs filed by the City Solicitors and Town Counsel Association and the Massachusetts Academy of Trial Attorneys.

in operating McGrath Field in 2007, including grass cutting and trimming, fertilization, and aeration.

On July 8, 2007, while participating in a league game, Marcus was sitting in a grassy area watching the game and waiting for his turn at bat. The area was shaded by several nearby trees, which stood on adjacent property owned by Temple Shalom. Marcus heard a cracking sound and realized that a tree was falling in his direction. He was unable to avoid the falling tree, which struck him in the back. Marcus suffered two fractured vertebrae, shattered right and left shoulder blades, and various other injuries as a result of the tree's impact.

b. *Procedural history.* Marcus filed his complaint in the Superior Court against the city and the other defendants (see note 1, *supra*) on July 2, 2009. With regard to the city, he alleged that it had a duty to maintain McGrath Field in a careful, safe, and prudent manner; it was negligent in poorly maintaining the property and, specifically, allowing the allegedly rotten tree and its branches to overhang its property without proper maintenance; and as a result of the city's negligence, he suffered serious physical injuries. In its answer, the city denied liability and asserted that, in any event, it was immune from liability under the recreational use statute, G. L. c. 21, § 17C. On June 15, 2010, the city filed its motion for summary judgment in which it presented, among other things, its claim of immunity from suit pursuant to G. L. c. 21, § 17C. After a hearing, a Superior Court judge denied the city's motion on the ground that there remained genuine issues of material fact. Its appeal followed.

c. *Recreational use statute.* The recreational use statute, G. L. c. 21, § 17C (§ 17C), provides that any person[3]

"having an interest in land . . . who lawfully permits the public to use such land for recreational, conservation, scientific, educational, environmental, ecological, research, religious, or charitable purposes without imposing a charge

---

[3]The statute defines "person" broadly to include "any governmental body, agency or instrumentality, a nonprofit corporation, trust, association, corporation, company or other business organization and any director, officer, trustee, member, employee, authorized volunteer or agent thereof." G. L. c. 21, § 17C (*b*).

or fee therefor . . . shall not be liable for personal injuries or property damage sustained by such members of the public . . . while on said land in the absence of wilful, wanton, or reckless conduct by such person. Such permission shall not confer upon any member of the public using said land, including without limitation a minor, the status of an invitee or licensee to whom any duty would be owed by said person."

§ 17C (*a*). The statute further provides that "[t]he liability of any person who imposes a charge or fee for the use of his land by the public for [any of the above enumerated] purposes . . . shall not be limited by any provision of this section." § 17C (*b*). Section 17C applies with equal force to governmental and private landowners. See *Ali* v. *Boston*, 441 Mass. 233, 237 n.7 (2004); *Anderson* v. *Springfield*, 406 Mass. 632, 634 (1990).

2. *Discussion.* The city contends that the doctrine of present execution entitles it to immediate review of the interlocutory order denying its motion for summary judgment.[4] The premise underlying its claim is that § 17C provides a landowner in its position with immunity from suit. We disagree.

a. *Doctrine of present execution.* As a general matter, "there is no right to appeal from an interlocutory order unless a statute or rule authorizes it." *Maddocks* v. *Ricker*, 403 Mass. 592, 597 (1988). "The policy underlying this rule is that 'a party ought not to have the power to interrupt the progress of the litigation by piecemeal appeals that cause delay and often waste judicial effort in deciding questions that will turn out to be unimportant.' " *Fabre* v. *Walton*, 436 Mass. 517, 521 (2002), *S.C.*, 441 Mass. 9 (2004), quoting *Borman* v. *Borman*, 378 Mass. 775, 779 (1979). However, a "narrow exception" to this general rule lies in the

---

[4]Although the city did not address the doctrine of present execution in its initial brief to the Appeals Court, Marcus argued that the city was not entitled to immediate appellate review under the doctrine. In our order transferring the appeal from the Appeals Court to this court, we requested that the parties submit supplemental briefs on the issue whether G. L. c. 21, § 17C, "where applicable, provides an immunity from suit (as opposed to exemption from liability) such that the denial of a defendant's [dispositive motion] on the basis of the statute is immediately appealable under the doctrine of present execution." The city then filed its supplemental brief arguing that it is entitled to immediate appellate review under the doctrine, and Marcus filed a supplemental brief taking the opposite position.

doctrine of present execution, under which an immediate appeal is appropriate "[1] where the interlocutory ruling 'will interfere with rights in a way that cannot be remedied on appeal' from the final judgment, and [2] where the matter is 'collateral' to the merits of the controversy." *Elles* v. *Zoning Bd. of Appeals of Quincy*, 450 Mass. 671, 674 (2008), quoting *Maddocks* v. *Ricker, supra* at 597-600. See, e.g., *Fabre* v. *Walton, supra* at 520-522 (interlocutory appellate review appropriate to consider denial of motion to dismiss filed pursuant to "anti-SLAPP" statute, G. L. c. 231, § 59H); *Brum* v. *Dartmouth*, 428 Mass. 684, 688 (1999) (interlocutory appellate review appropriate to consider Commonwealth's motion to dismiss based on claim of immunity from suit pursuant to Massachusetts Tort Claims Act, G. L. c. 258, § 10).

Under this rule, litigants claiming immunity may only avail themselves of the doctrine of present execution if § 17C provides immunity from suit, rather than merely an exemption from liability for ordinary negligence.[5] See *Breault* v. *Chairman of the Bd. of Fire Comm'rs of Springfield*, 401 Mass. 26, 31 (1987), cert. denied sub nom. *Forastiere* v. *Breault*, 485 U.S. 906 (1988). This result obtains because, "[i]f . . . the asserted right is one of freedom from suit, the defendant's right will be lost forever unless that right is determined now," whereas "if the asserted right to immunity is but a right to freedom from liability . . . [the defendant's] right could be vindicated fully on appeal after trial." *Id.* See *Brum* v. *Dartmouth*, 428 Mass. at 688 (only orders denying immunity from suit enjoy benefit of present execution doctrine, because "[t]he right to immunity from suit would be 'lost forever' if an order denying it were not appealable until the close of litigation . . .").

The city's motion for summary judgment asserted a claim of immunity from suit, but in other pleadings, the city claimed immunity from liability. The city has a right to interlocutory

---

[5]We previously have allowed an interlocutory appeal from a denial of a motion for summary judgment based on government immunity from suit under 42 U.S.C. § 1983 (1982). See *Hopper* v. *Callahan*, 408 Mass. 621, 624 (1990). As a consequence, there is no merit to Marcus's claim that the city has essentially waived its right to appeal pursuant to the doctrine of present execution by not filing a motion to dismiss. We have never required this doctrine to be asserted at the earliest possible stage of litigation.

appeal only if § 17C provides immunity from suit, rather than merely an exemption from liability for ordinary negligence. In evaluating whether § 17C provides immunity from suit or merely an exemption from liability, we first examine the plain language of the statute. See *Commissioner of Revenue* v. *Cargill, Inc.*, 429 Mass. 79, 82 (1999). Section 17C provides that a landowner making land open to the public for recreational uses free of charge "shall not be *liable* for personal injuries or property damage sustained by such members of the public [unless there is wilful, wanton, or reckless conduct]" (emphasis added). In other words, where the landowner does not impose a fee or charge, § 17C merely provides an exemption from liability for ordinary negligence claims; it does not provide immunity from suit. Even if a landowner can claim the full scope of immunity available under the statute, that landowner will still be liable for "wilful, wanton, or reckless conduct," and thus is not immune from suit. See G. L. c. 21, § 17C (*a*). We need go no further than the plain text of § 17C to conclude that the statute provides only immunity from liability. Thus, the city is not entitled to an interlocutory appeal from the denial of its motion for summary judgment under the doctrine of present execution.

b. *Exemption from liability for negligence under § 17C.* Nevertheless, we address the city's claim that in the circumstances of this case, it qualified for § 17C's exemption from liability for ordinary negligence as a matter of law, and that, therefore, its motion for summary judgment should have been granted. We choose to do so because the claim has been briefed fully by the parties, it raises a significant issue concerning the proper interpretation of the recreational use statute, and addressing it would be in the public interest. See, e.g., *Boxford* v. *Massachusetts Highway Dep't*, 458 Mass. 596, 601 n.13 (2010), citing *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943).

i. *Payment of fee.* The city asserts it must be exempt from negligence liability because Marcus himself paid no admission fee or other charge to the city in exchange for playing softball on McGrath Field.[6] In support of the claim, the city points to a

---

[6]There is no dispute that the city owns the land in question and that the plaintiff was engaged in a "recreational" activity as contemplated by the recreational use statute.

decision of this court and one of the Appeals Court where the plaintiffs had not paid entrance or admission fees to gain access to public recreational facilities, although some kind of registration fee was paid to the public landowner in connection with the sports activities the plaintiffs had come to watch. See *Seich* v. *Canton*, 426 Mass. 84, 85-86 (1997) (*Seich*); *Whooley* v. *Commonwealth*, 57 Mass. App. Ct. 909, 910 (2003) (*Whooley*). These cases are very different on their facts from the instant case.[7]

The statute, by its terms, focuses on whether the landowner "lawfully permits the public to use such land for recreational . . . purposes without imposing a charge or fee therefor." § 17C (*a*).[8] In other words, the issue is whether the landowner

---

[7] In *Seich* v. *Canton*, 426 Mass. 84 (1997) (*Seich*), the plaintiffs were the parents of a child who was participating in a basketball league organized by the town's recreation department. The parents had paid a sixty-five dollar registration fee to the town in order for their daughter to participate; the fee covered the basketball league's incidental costs. *Id.* at 84, 85 & n.3. In the plaintiffs' suit for damages relating to injuries sustained by the mother while she was watching her daughter's basketball game, this court affirmed the grant of summary judgment in favor of the town, concluding that the town was entitled as a matter of law to the exemption from negligence liability under § 17C. *Id.* at 86. We reasoned that the registration fee was a charge for participation in the basketball league itself, not for use of the school's gymnasium, *id.* at 85, and the town charged no admission fee for the plaintiffs to be spectators at the game. *Id.* We quoted with approval the observation of the motion judge that "[w]hether or not the plaintiffs ever went to the school to watch their daughter, they still had to pay a fee for her to register with the basketball team. On the other hand, even if the plaintiffs did not register their daughter to play on the team, the plaintiffs, along with any other member of the public, could have gone to the school and observed the basketball game without paying a fee." *Id.* at 86.

In *Whooley* v. *Commonwealth*, 57 Mass. App. Ct. 909 (2003), the plaintiff went to an ice hockey rink owned by the Commonwealth to watch her grandson play ice hockey. She was injured in a fall on her way to the bleachers. *Id.* at 909. She claimed that the youth hockey league in which her grandson participated had paid a fee to use the rink, *id.* at 910, but she did not pay any fee to be a spectator. Following *Seich*, the Appeals Court concluded that the plaintiff was a spectator who, like any other member of the public, could enter the rink facility free of charge and watch any hockey game being played, and that in those circumstances, the town could claim exemption from negligence liability under G. L. c. 21, § 17C. *Whooley* v. *Commonwealth, supra.*

[8] The same focus is evident in G. L. c. 21, § 17C (*b*), which provides in its first sentence that "[t]he liability of any person who imposes a charge or fee for the use of his land by the public for the purposes described in [G. L. c. 21, § 17C (*a*),] shall not be limited by any provision of this section."

charges a fee for the particular use to which the plaintiff puts the land. More specifically, and contrary to the city's apparent reading, § 17C does *not* provide an exemption from liability for ordinary negligence if the landowner imposes a charge or fee for a particular use of recreational land, but the user does not personally or directly pay the charge to the landowner.

For present purposes, the salient point in *Seich, supra,*[9] and *Whooley, supra,* is that the landowners permitted members of the public to use the recreational facilities at issue to attend and watch youth athletic games free of charge, and the plaintiffs in both cases were, in fact, using the facilities in question in such a manner at the time each was injured: each had entered, free of charge, the particular facility (gymnasium or hockey rink) to watch a child (daughter or grandson) play in a game. That a payment was made in each case to the landowner to enable the child to participate in the game had no bearing on each injured plaintiff's own recreational use of the property in question, for which there was no charge. See *Seich,* 426 Mass. at 86; *Whooley,* 57 Mass. App. Ct. at 910. Here, in contrast, Marcus paid Coed Jewish Sports to be able to play in softball games on a field owned by the city, Coed Jewish Sports in turn paid a fee charged by the city in order to reserve the field for the softball games,[10] and Marcus was injured while he was participating as a player in one such game on the field. That Marcus did not pay directly to the city its permit fee to reserve McGrath Field is not material. What matters is that the city imposed this fee or charge for the exclusive use of the field during the reserved blocks of time; Coed Jewish Sports paid the fee on behalf of its league players, including Marcus; and he was injured while playing a game on the field during one of the reserved blocks of time. In the circumstances, Marcus was not participating in a recreational use of the city's property free of charge.

---

[9]We discuss later in part 2.b.ii, *infra,* another aspect of the court's decision in *Seich,* 426 Mass. at 86.

[10]The city disputed this at oral argument, describing the payment by Coed Jewish Sports as an unenforced "convenience" rather than as a confirmed reservation of the field. This is contrary to the affidavit of a city parks and recreation department employee, which stated that the fee paid by Coed Jewish Sports "allowed the league to reserve McGrath Field." At the least, these conflicting statements are enough to create a genuine issue of material fact, making the case inappropriate for resolution on summary judgment.

ii. *Purpose of payment.* Finally, the city urges that because its charge to the league was not a "fee," but instead "represents administrative and operational costs," it is not divested of the exemption from liability for ordinary negligence under § 17C (*a*). The city reads *Seich*, 426 Mass. at 86, and the Appeals Court's decision in *Dunn* v. *Boston*, 75 Mass. App. Ct. 556, 561-562 (2009) (*Dunn*), to mean that if, as the city claims to be an undisputed fact, the monies paid by Coed Jewish Sports were used by the city merely to cover a portion of the operating and administrative costs associated with maintaining McGrath Field,[11] the city's exemption from negligence liability under § 17C remains intact.

We disagree. The *Seich* and *Dunn* cases signify that when a landowner imposes a charge intended solely to reimburse it for marginal costs directly attributable to a specific user's recreational use of the property, the landowner remains exempt from ordinary negligence claims under § 17C. See *Seich*, *supra* (concluding that portion of town's youth basketball league registration fee that was used to pay custodians to keep gymnasium open for league games after regular hours "is not the equivalent of the town imposing a fee for the use of its land for recreational purposes"); *Dunn*, *supra* (where organization holding event on City Hall Plaza under one-time entertainment license paid city for security and janitorial services associated with event, payment "properly categorized as a reimbursement, rather than a 'charge or fee' within the meaning of [§ 17C]"; city therefore retained exemption from negligence liability).

On the record before us, the city has not established that the payment at issue is the type of reimbursement contemplated by *Seich*, *supra*, and *Dunn*, *supra*. We take as undisputed that the city dedicated the $1,200 received from Coed Jewish Sports to the upkeep of McGrath Field — that is, the payment became part of the $12,105.85 the city spent in 2007 for the various purposes listed in note 11, *supra*. But the fact that the city used

---

[11]In his affidavit, the employee averred that the $1,200 fee from the league was used to "defray" part of the $12,105.85 in costs incurred by the city for operating McGrath Field in 2007, including $256.96 in administrative costs and $11,848.89 in maintenance costs. Maintenance costs included grass cutting and trimming, fertilization, aeration, seed slicing, and irrigation repairs. Administrative costs included the time spent processing permit requests.

the permit fee received for general field upkeep is insufficient in itself to shield the city from ordinary negligence liability under § 17C (*a*). In other words, there is no evidence in the summary judgment record to support the conclusion that the payment from Coed Jewish Sports was used to reimburse the city for marginal costs that it would not have incurred but for the league's particular use of McGrath Field during the summer of 2007. Consequently, summary judgment was properly denied on the city's claim that it was exempt from negligence liability as a matter of law.[12]

3. *Conclusion.* For the reasons stated, the city's appeal from the denial of its motion for summary judgment is dismissed.

*So ordered.*

---

[12]Although the city is not entitled to summary judgment, presumably it may attempt to prove at trial that the fee was used solely as reimbursement for marginal costs directly attributable to the league's particular use of McGrath Field; if it did so successfully, the exemption from liability for negligence would apply. The city did admit at oral argument, however, that the money is not used "exclusively for the benefit of the league." Additional discovery may be needed on this issue. However, as explained in the text, showing only that the city budgeted the entirety of the fee paid by Coed Jewish Sports for administrative and maintenance costs associated with McGrath Field's general upkeep will not allow the city to claim exemption from negligence liability under G. L. c. 21, § 17C.