LINDA PATTERSON & another[1] *vs.* CHRIST CHURCH IN THE
CITY OF BOSTON & others.[2]

No. 13-P-354.

Suffolk. January 10, 2014. - April 3, 2014.

Present: KAFKER, GRAINGER, & MEADE, JJ.

*Negligence,* One owning or controlling real estate, Violation of regulation.
*Church. Consumer Protection Act,* Unfair or deceptive act. *Architectural
Access Board. Administrative Law,* Regulations. *Regulation. Attorney
General. Words,* "Charge or fee."

In a civil action arising from injuries the plaintiff sustained when she fell dur-
ing a tour of the defendant church offered by the codefendant church-
affiliated foundation, a Superior Court judge properly entered summary
judgment in favor of the defendants on the plaintiff's negligence claims,
where G. L. c. 21, § 17C, the recreational use statute, exempted the defend-
ants from liability, in that the plaintiff paid neither a direct nor indirect fee
to enter or tour the church, nor did the plaintiff make any contribution,
direct or indirect, to the annual fee paid to the church by the foundation,
and in that the plain text of the statute did not require that the defendants
be excluded from protection against liability on the ground that the founda-
tion generated revenue on the church property. [159-163]
In a civil action arising from injuries the plaintiff sustained when she fell into
a pew box during a tour of the defendant church offered by the codefend-
ant church-affiliated foundation, a Superior Court judge properly entered
summary judgment in favor of the defendants on the plaintiff's claims
under the consumer protection act, G. L. c. 93A (i.e., that the defendants
were liable given that the church was not in compliance with certain
Architectural Access Board [board] accessibility requirements), where the
judge properly determined that any failure by the defendants to maintain
the pew box in compliance with the board's regulations did not rise to the
level of unfair or deceptive conduct [163-164]; where the plaintiffs failed
to establish a connection between the alleged misconduct and the defend-
ants' business activities [164-165]; and where the failure to conform the

---

[1]Kenneth Patterson, her husband.

[2]The Old North Foundation of Boston, Inc., Howard Williams, and Stephen
T. Ayers. Williams is the sexton of Old North Church; Ayers is the church
vicar and senior pastor. Additional defendants were dismissed prior to appeal
pursuant to stipulations of dismissal. As is our custom, we spell the defend-
ants' names as they appear on the complaint.

pew box to the board's regulations was an infraction too attenuated from protection of consumers to constitute a violation of 940 Code Mass. Regs. § 3.16(3) (1993), the so-called Attorney General's Regulation. [165-167]

CIVIL ACTION commenced in the Superior Court Department on September 22, 2009.

A motion for summary judgment was heard by *Frances A. McIntyre*, J., and entry of separate and final judgment was ordered by *Paul D. Wilson*, J.

*Michael J. Heineman* for the plaintiffs.

*Joseph M. Desmond* (*William Wynne* with him) for the defendants.

MEADE, J. The plaintiffs, Linda and Kenneth Patterson, appeal from the entry of summary judgment in favor of various defendants affiliated with Boston's Old North Church (the church). The Pattersons brought suit after Linda was injured as a result of her falling inside the church. On appeal, the Pattersons claim the Superior Court judge erred in determining that the recreational use statute, G. L. c. 21, § 17C, barred liability on Linda's negligence claims, and that Linda's claims under the consumer protection act, G. L. c. 93A, were not viable.[3] We affirm.

*Background.* 1. *The accident.* The material facts are not in dispute. In October, 2006, the Pattersons visited Old North Church, a historic landmark located in Boston's North End. The Pattersons, who were in their sixties at the time, traveled to Boston as part of a sightseeing tour organized by a senior center near their home in Georgia. The couple paid the senior center $1,738 to participate in the trip, which also included stops at tourist destinations in Virginia, Connecticut, and New York.

Neither the Pattersons nor anyone in their sightseeing group were charged a fee to enter or tour the church. When the group was inside the sanctuary, a docent ushered the group to sit in the church's pew boxes. At the entryway to each raised pew box was a hinged door and a single-step riser painted a shade of

---

[3]The judge also entered summary judgment for the defendants on Kenneth's claim for loss of consortium on the basis that his claim could not survive the judgment for the defendants on Linda's negligence claims. See *Sena* v. *Commonwealth*, 417 Mass. 250, 264 (1994). On appeal, the Pattersons have made no separate argument with respect to the loss of consortium claim.

red similar to the red carpet on the floor. The Pattersons were not warned to use caution or watch their step. As Linda attempted to enter a pew box, she tripped on the riser and fell on the pew bench. She sustained serious injuries that required surgery and rehabilitation, and incurred significant medical expenses that were not covered by her health insurance.

2. *The church.* The Old North Foundation of Boston, Inc. (foundation), is a nonprofit organization responsible for organizing tours and historical programs at the church. Over 500,000 tourists visit annually. Docents employed by the foundation answer questions and give free presentations to the public. The terms of the foundation's operations at the church are detailed in a memorandum of understanding (MOU) signed by the foundation, Christ Church in the City of Boston (Christ Church),[4] and the Episcopal Diocese of Massachusetts. In 2006, the MOU required the foundation, in addition to other responsibilities, to pay Christ Church $93,780 for the right to operate. The foundation raises revenue from its gift shop, from fees for specialized tours to exclusive areas of the church, and from other development efforts.

*Standard of review.* "In considering a motion for summary judgment, we view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party." *Premier Capital, LLC* v. *KMZ, Inc.*, 464 Mass. 467, 474-475 (2013). Our review is de novo, and we "must determine whether all material facts and questions of law are resolved." *Suffolk Constr. Co.* v. *Illinois Union Ins. Co.*, 80 Mass. App. Ct. 90, 93 (2011). Negligence cases are not frequently resolved by summary judgment, but "a judge may decide the issue as matter of law when no rational view of the evidence permits a finding of negligence," *Roderick* v. *Brandy Hill Co.*, 36 Mass. App. Ct. 948, 949 (1994); or as here, where the defendant offers a statutory exemption from liability as an affirmative defense. See *Seich* v. *Canton*, 426 Mass. 84 (1997); *Ali* v. *Boston*, 441 Mass. 233 (2004).

*Discussion.* 1. *Negligence claims under the recreational use statute.* The Pattersons contend that Linda's accident occurred because, in the poorly lit church, she was unable to discern the

---

[4]Christ Church is a nonprofit corporation that manages the church and its use for worship by its Episcopal congregation.

red riser from the red carpet. They allege that by maintaining the property in this defective condition, the defendants breached a duty of reasonable care owed to them.

The recreational use statute, G. L. c. 21, § 17C (the statute),[5] grants an exemption from liability for ordinary negligence where a defendant has an interest in land, the plaintiff was injured when engaged in a recreational activity on that land, and the defendant did not "impos[e] a charge or fee" for the injured plaintiff's use of the land. G. L. c. 21, § 17C. See *Marcus* v. *Newton*, 462 Mass. 148, 153-155 (2012). "[F]or purposes of landowner liability, while recreational users fall into the category of 'lawful visitors' under the common law, by statute they comprise a discrete subgroup of lawful visitors owed only the standard of care applicable to trespassers: that is, landowners must refrain from wilful, wanton, or reckless conduct as to their safety." *Ali* v. *Boston*, 441 Mass. at 237.

The parameters of this appeal are as follows. The Pattersons do not dispute the judge's determination that the defendants have an interest in the church sufficient to warrant protection under the statute.[6] Also, the fact that the church anticipates and accommodates a high volume of tourism activity does not disqualify the Pattersons' visit from being considered a "recre-

---

[5] At the time of Linda's accident, G. L. c. 21, § 17C, as appearing in St. 1998, c. 268, read in relevant part:

> "(*a*) Any person having an interest in land including the structures, buildings, and equipment attached to the land . . . who lawfully permits the public to use such land for recreational . . . educational . . . religious, or charitable purposes without imposing a charge or fee therefor, or who leases such land for said purposes to the commonwealth or . . . to any nonprofit corporation, trust or association, shall not be liable for personal injuries . . . sustained by such members of the public . . . while on said land in the absence of wilful, wanton, or reckless conduct by such person. Such permission shall not confer upon any member of the public using said land . . . the status of an invitee or licensee to whom any duty would be owed by said person."

Section 17C was subsequently amended, in respects not here material, by St. 2008, c. 513, §§ 1, 2, effective April 14, 2009.

[6] Although they challenged below the foundation's interest in the church, on appeal, the Pattersons make only cursory mention of the issue, and then only in their reply brief. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). See also G. L. c. 21, § 17C(*b*) (broadly defining "person" as one with "an interest in the land," along with "his agent, manager or licensee").

ational use." See *Ali* v. *Boston, supra* at 238. The act of visiting a tourist destination while on vacation passes the test of "whether the plaintiff is . . . engaged in an objectively recreational activity." *Ibid.* Finally, on appeal the Pattersons have abandoned their claim that the defendants' actions rose to the level of wilful, wanton, or reckless conduct for purposes of the statute. See *Dunn* v. *Boston*, 75 Mass. App. Ct. 556, 562 (2009). As a result, we are tasked with determining whether the defendants are excluded from the protections of the statute based on whether they "impose[d] a charge or fee" under the statute. See G. L. c. 21, § 17C.

Despite the fact that the Pattersons entered and toured the church free of charge, they claim that the defendants imposed a "charge or fee" because the foundation generates revenue and pays Christ Church an annual fee. In support of this assertion, the Pattersons rely on *Marcus* v. *Newton*, 462 Mass. at 155-156, and argue that a defendant who reaps an economic benefit from property utilized by the public free of charge is barred from relief under the recreational use statute. We disagree.

In *Marcus*, the Supreme Judicial Court held that when determining a defendant's exemption from negligence liability under the recreational use statute, "the issue is whether the landowner charges a fee for the particular use to which the plaintiff puts the land." *Id.* at 154-155. The injured plaintiff in *Marcus* paid eighty dollars to join a private softball league, and the league then paid the city of Newton $1,200 for a permit for use of a playing field. *Id.* at 149. The court concluded that the city was not, as a matter of law, shielded from liability because under these "circumstances, Marcus was not participating in a recreational use of the city's property free of charge." *Id.* at 155. Moreover, the court distinguished *Seich* v. *Canton*, 426 Mass. 84 (1997), and *Whooley* v. *Commonwealth*, 57 Mass. App. Ct. 909 (2003), by noting that the injured plaintiffs in those cases did not pay a fee for their recreational use of the defendants' property, i.e., watching a child participate in youth athletics. *Marcus* v. *Newton, supra* at 155. The fact that the children in *Seich* and *Whooley* had paid to participate in sports "had no bearing on each injured plaintiff's own recreational use of the property in question, for which there was no charge." *Ibid.*

Unlike the injured plaintiff in *Marcus*, who paid an indirect

fee for his use of the defendant's land, here, it is undisputed that the Pattersons paid neither a direct nor an indirect fee to enter or tour the church. There is no claim that any part of the $1,738 they paid the Georgia senior center facilitated their access to the church. The fact that the foundation operates a gift shop and charges for behind-the-scenes, specialized tours of the church does not equate to a "charge or fee" imposed on the Pattersons. See *Marcus* v. *Newton*, *supra* at 154-155.

In similar vein, the annual fee the foundation paid Christ Church is not akin to the softball league permitting fee in *Marcus* and does not constitute a "charge or fee" under the statute. Unlike the plaintiff in *Marcus*, the Pattersons made no contribution, direct or indirect, to the $93,780 payment the foundation made to Christ Church in 2006. See *id.* at 155. Even if we were to accept the Pattersons' characterization that, absent the annual payment, the church doors would not have been open to the public free of charge, it would not change the fact that no charge or fee was imposed on them in this case. See *id.* at 154-155.[7]

Finally, the Pattersons claim that the defendants should be denied protection from liability because nothing in the recreational use statute or its legislative history indicates the Legislature's intent to immunize defendants who generate revenue on private property. We disagree. When interpreting a statute, we consider the text "the principal source of insight into Legislative purpose." *Providence & Worcester R.R.* v. *Energy Facilities Siting Bd.*, 453 Mass. 135, 142 (2009) (citation omitted). Here, we must follow the statute's unambiguous language because doing so yields neither an absurd result nor one contrary to the manifest intention of the Legislature. See *ibid.* See also *Ali* v. *Boston*, 441 Mass. at 238 (the statute's purpose is "to encourage landowners to permit broad, public, free use of land for recreational purposes"). The plain text of the statute does not require that the defendants be excluded from protection

---

[7]Furthermore, to conclude that the foundation's annual payment forecloses protection from liability would conflict with the statute's application to leased land. See G. L. c. 21, § 17C. Indeed, if this were true, any lessor who qualified for protection but earned an economic benefit from the lease would be barred from asserting the statute as a defense. Such a result would conflict with the clear language of the statute. See *Commissioner of Rev.* v. *Cargill, Inc.*, 429 Mass. 79, 82 (1999).

against liability because they generate revenue on the church property, and our judicial function does not permit us to read the Pattersons' proposed limiting language into the statute. See *King* v. *Viscoloid Co.*, 219 Mass. 420, 425 (1914) (we may not "read into the statute a provision which the Legislature did not see fit to put there").

Furthermore, we decline the invitation to interpret the statute based on case law from other jurisdictions. "Where, as here, the language of the statute is clear, it is the function of the judiciary to apply it, not amend it." *Commissioner of Rev.* v. *Cargill, Inc.*, 429 Mass. 79, 82 (1999). Had the Legislature intended to limit the recreational use statute in the manner advocated by the Pattersons, it could have done so. See *ibid.* Consequently, the defendants are entitled to immunity from the negligence claims as a matter of law under G. L. c. 21, § 17C.[8]

2. *Claims under the consumer protection act.*[9] General Laws c. 93A, § 2(*a*), inserted by St. 1967, c. 813, § 1, declares unlawful: "unfair or deceptive acts or practices in the conduct of any trade or commerce." The Pattersons allege that the church and the foundation are liable under G. L. c. 93A because when Linda was injured in the pew box, the church was not in compliance with certain Architectural Access Board (AAB) accessibility requirements. We disagree.

a. *General liability.* For the purposes of summary judgment, we accept the Pattersons' contention that the pew boxes did not conform to certain regulations promulgated by the AAB concerning floor surface accessibility.[10] But, a "negligent act standing by itself does not give rise to a claim under c. 93A." *Squeri*

---

[8]Because the negligence claims are barred by the recreational use statute, we need not address the applicability of the charitable immunity cap. See G. L. c. 231, § 85K.

[9]The Pattersons claim that they did not fully brief the G. L. c. 93A claims at the summary judgment stage because the claims were decided on elements the defendants had not challenged. We observe that, in any event, for purposes of argument before this court, the Pattersons have been on notice for quite some time of the scope of potentially dispositive issues in their c. 93A claims, given that the judge's detailed memorandum of decision was issued in July, 2012.

[10]The Pattersons allege violations of: 521 Code Mass. Regs. § 3.3.2 (1998) (building renovations costing 30 percent or more of building's value require that the entire building comply with Title 521 Code Mass. Regs.); 521 Code Mass. Regs. § 16.1 (1996) (houses of worship shall comply with Title 521

v. *McCarrick*, 32 Mass. App. Ct. 203, 207 (1992). "There must in addition be evidence that the negligence was or resulted in an unfair or deceptive act or practice." *Ibid.* In the light most favorable to the Pattersons, no characterization of the evidence could give rise to a finding that the defendants' maintenance of the raised pew boxes was an "unfair or deceptive" act under c. 93A. See *PMP Assocs.* v. *Globe Newspaper Co.*, 366 Mass. 593, 596 (1975) (an act is unfair if it falls within established concepts of unfairness, or is "immoral, unethical, oppressive, or unscrupulous"). The judge properly determined that "the defendants' actions at most could be construed as negligent supervision of a renovation project, which they contracted with an architectural firm to perform." There is no evidence that the defendants intentionally failed to comply with the AAB accessibility requirements or engaged in fraud or deceit while encouraging church visitors to sit in the pew boxes. See *Poly* v. *Moylan*, 423 Mass. 141, 151 (1996), cert. denied, 519 U.S. 1114 (1997) (negligent conduct, without "dishonesty, fraud, deceit or misrepresentation" did not give rise to c. 93A violation). This case lacks the coercive and "[i]ntentionally gainful misconduct" that is often central to c. 93A wrongdoing. See *McGonagle* v. *Home Depot U.S.A., Inc.*, 75 Mass. App. Ct. 593, 600 n.9 (2009). The judge properly determined that any failure by the defendants to maintain the pew boxes in compliance with AAB regulations did not rise to the level of unfair or deceptive conduct.[11]

Furthermore, the Pattersons failed to establish a connection between the alleged misconduct and the defendants' business activities. See *id.* at 599-600 (test is whether the misconduct serves the actor's financial benefit or gain). "The purpose of G. L. c. 93A is to improve the commercial relationship between

Code Mass. Regs.); 521 Code Mass. Regs. § 20.1 (1996) (accessible route shall provide unobstructed path connecting accessible spaces); 521 Code Mass. Regs. § 29.2 (1998) (certain ground and floor surfaces shall be of a common level). The regulations are enabled by G. L. c. 22, § 13A. Neither party addressed the church's eligibility for a variance under 521 Code Mass. Regs. § 4.1 (1996).

[11]The judge also properly determined that because 521 Code Mass. Regs. § 2.3 (1996) deems a violation of the AAB regulations to be "gross negligence for the purpose of G. L. c. 112, § 60G(*d*)," and G. L. c. 112, § 60G, regulates the licensure and discipline of architects, it has no applicability to these defendants.

consumers and business persons and to encourage more equit-able behavior in the marketplace." *Poznik* v. *Massachusetts Med. Professional Ins. Assn.*, 417 Mass. 48, 53 (1994). Here, the Pattersons' claim that the defendants' renovations, which included the "placement of carpet that effectively hid the similarly-colored tripping hazard" in the pew risers was "part of the Defendants' efforts to run the money-making tourist at-traction," is not supported by the record. There is no evidence that the condition of the pew box risers or choice of red paint or red carpet provided a business incentive for the defendants. Linda fell in the church sanctuary while participating in a free tour. Nothing in the record suggests that any possible negligence by the defendants related to an entrepreneurial aspect of the church or foundation. See *Darviris* v. *Petros*, 442 Mass. 274, 280 (2004). As the judge properly noted, although the defend-ants may be engaging in business activities through their fee-related behind-the-scenes tours and their gift shop operations, these operations had nothing whatsoever to do with Linda's fall.

b. *Liability under the Attorney General's regulation.* Pursuant to 940 Code Mass. Regs. § 3.16(3) (1993) (the Attorney General's Regulation),[12] an act or practice violates G. L. c. 93A if: "It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection . . . ." The Pattersons contend that under the AAB regulations, "level changes of 3 and ½ to 4 inches, such as that confronted by [Linda] at the pew entry, were not permissible." They claim that the absence of an "accessible route" required by 521 Code Mass. Regs. § 20.1, denied Linda an unobstructed path inside the church. The Pattersons then make a conclusory argu-ment that the Attorney General's Regulation "squarely places the involved statutory and regulatory violations within the scope of G. L. c. 93A." We disagree.

In *Klairmont* v. *Gainsboro Restaurant, Inc.*, 465 Mass. 165, 174 (2013), the Supreme Judicial Court noted that "a violation of the building code[] will be a violation of c. 93A, § 2(*a*), only

---

[12]The Attorney General's Regulation is promulgated pursuant to G. L. c. 93A, § 2(*c*).

if the conduct leading to the violation is both unfair or deceptive and occurs in trade or commerce." As we have previously explained, the alleged violations here were not unfair or deceptive. See *Darviris* v. *Petros*, 442 Mass. at 281 (Attorney General's rule-making power under c. 93A, § 2[c], limited to "concepts of deception or unfairness"). Here, unlike in *Klairmont*, there is no evidence, or even an assertion that the "defendants knowingly failed to acquire . . . required permits in order to avoid the expense of building code compliance."[13] *Klairmont* v. *Gainsboro Restaurant, Inc.*, *supra* at 176. Moreover, despite its broad terms, the Attorney General's Regulation is bound by "the substantive limitation that the law or regulation at issue must be intended to protect consumers." *Id.* at 174. The AAB regulations cited by the Pattersons are not directed at the protection of consumers in the marketplace, but instead regulate building accessibility. The purpose of the regulations is to ensure that public buildings are accessible to, functional, and safe for persons with disabilities. See 521 Code Mass. Regs. § 2.1 (1996). The fact that the AAB regulations may aim to protect "the public's health, safety or welfare," 940 Code Mass. Regs. § 3.16(3), does not mean that every instance of noncompliance constitutes a violation of c. 93A. See *Klairmont* v. *Gainsboro Restaurant, Inc.*, *supra* at 173.[14] The final limiting phrase of the Attorney General's Regulation requires the violated legal provision to be one aimed at providing consumers protection. *McGonagle* v. *Home Depot U.S.A., Inc.*, 75 Mass. App. Ct. at 601. The failure to conform the church's pew boxes to the AAB regulations is an infraction too attenuated from the protection of *consumers* to constitute a violation of the Attorney General's Regulation. See *ibid.* Such an "overbroad reading of 940 Code Mass. Regs. § 3.16(3) would 'siphon into the province of c. 93A a bottomless reservoir of

---

[13]For the first time on appeal, and only in passing, the plaintiffs suggest that, based on the cost of the renovations, additional permits were required.

[14]Contrary to the Pattersons' claim, this case is not like *Klairmont* v. *Gainsboro Restaurant, Inc.*, *supra*. In that case, the Supreme Judicial Court upheld a finding of liability under c. 93A when a man died after falling down an obscured staircase in a bar replete with "multiple and very serious hazards that constituted violations of the building code." 465 Mass. at 172. However, the court highlighted its narrow holding, noting that "not all building code violations — indeed, very few — will give rise to violations of c. 93A." *Id.* at 176. This case is not one of the "very few."

ulterior public health, safety, and welfare infractions regulated by separate programs of the police power.' " *Klairmont* v. *Gainsboro Restaurant, Inc., supra* at 177, quoting from *McGonagle* v. *Home Depot U.S.A., Inc., supra* at 601.

*Judgment affirmed.*