MILKEY, J.
*455 On June 19, 2015, plaintiff Cynthia Gerante was at an indoor sports facility in Orange watching her thirteen year old son play dekhockey (an organized form of what is commonly known as street hockey). After the game concluded, Gerante fell from *1032 the bleachers and tore a ligament in her knee. She then brought a personal injury action in Superior Court alleging that the operator of the Orange facility, defendant 202 Sports Complex, LLC (202 Sports), negligently failed to secure the bleachers *456 properly. Gerante's husband joined as a plaintiff to press a claim for loss of consortium. 202 Sports moved to dismiss the action on the ground that it was immune from liability pursuant to G. L. c. 21, § 17C, the so-called recreational use statute. Treating the motion as one for summary judgment, a Superior Court judge ruled in favor of 202 Sports and dismissed the complaint.[2] On the plaintiff's appeal, we affirm.
Background. The Orange facility is owned by the Hunt Family Trust (trust). 202 Sports operates the facility under an oral lease with the trust, and the two entities have overlapping management, with the trustee of the trust serving as a member of 202 Sports. Without challenge by the plaintiffs, 202 Sports averred that -- through its leasehold with the trust -- it "had an interest in the dekhockey premises" in Orange.
Another member of 202 Sports is Chris Housser, who serves as co-manager of that entity. Housser also is the president of Leominster Dekhockey Center, Inc. (Leominster Dekhockey), which operates a dekhockey facility in Leominster. In 2015, he organized a dekhockey tournament to be played at various "rinks," including those in both Leominster and Orange. The plaintiffs paid a fee to Leominster Dekhockey so that their son could participate in the tournament. The son played goalie for a dekhockey team known as the Snipers.
On June 19, 2015, tournament games were being hosted at the Orange facility. Housser "personally supervised the setup of the dekhockey rink at that location." Transportation was not provided by the Snipers, the league, or either facility, and therefore Gerante herself drove her son to the game. She then stayed to watch the game, observing it from the top level of the bleachers. Her complaint characterizes her role there as that of a "spectator." An affidavit she submitted in opposition to 202 Sports's motion additionally averred that she "supervised" her son at the game, without providing detail of what that meant. It is undisputed that the Snipers had a coach and an assistant coach, and that there were referees officiating the game.
Spectators were welcome at the dekhockey tournament held at the Orange facility, and they were not charged an entrance fee to watch the game. The only payment that Gerante alleges that she made in connection with the Orange facility was the fee that she and her husband paid to Leominster Dekhockey in order for their *457 son to play in the tournament.[3] *1033 Discussion. The recreational use statute, G. L. c. 21, § 17C, serves to protect owners of land from negligence claims brought by people who were injured while using that land, without charge, for recreational purposes.[4] See Marcus v. Newton, 462 Mass. 148, 150-151, 967 N.E.2d 140 (2012). It is undisputed that the plaintiffs paid no direct fee to 202 Sports on behalf of themselves, or their son, to use the Orange facility. Nevertheless, the plaintiffs maintain that the payment they made to Leominster Dekhockey to allow their son to play in the tournament qualifies as an indirect fee for their use of the Orange facility. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 155-157, 967 N.E.2d 140 (city not protected by § 17C for injuries sustained by participant in softball game who paid fee to play in softball league, where league in turn paid city for exclusive use of municipal softball fields). Although the plaintiffs *458 did not show that 202 Sports itself received payment from the funds paid to Leominster Dekhockey, the plaintiffs argue that it is fair to attribute such payments to 202 Sports given the interlocking relationship between the two entities.[5]
For purposes of our analysis, we assume arguendo that the payment that the plaintiffs made on their son's behalf qualifies as an indirect charge -- inuring to 202 Sports -- for their son to use the Orange facility. This might affect 202 Sports's ability to enjoy the protections of the recreational use statute with regard to any injuries sustained by the son while he was using that facility. It would not follow, however, that 202 Sports thereby would lose the protections of the statute with regard to injuries sustained by parents or other spectators who were watching the game. As the case law makes clear, whether the recreational use statute serves to preclude a claim brought by a particular injured party must be analyzed with respect to whether that party should be deemed a member of the public who was using the land for recreational purposes without charge. See Seich v. Canton, 426 Mass. 84, 86, 686 N.E.2d 981 (1997) ; Whooley v. Commonwealth, 57 Mass. App. Ct. 909, 910, 783 N.E.2d 461 (2003). We turn to examining those cases in some depth.
In Seich, a mother was injured while on municipal property to watch her daughter play basketball. She alleged that the fee that the town had charged for her daughter to play in the league qualified as a payment for the use of the town's recreational *1034 facility, thereby preventing the town from enjoying the protections of the recreational use statute. See Seich, 426 Mass. at 85, 686 N.E.2d 981. The Supreme Judicial Court rejected that argument. In doing so, the court focused in particular on the fact that the mother -- like other members of the public -- was not charged a fee to come watch her child play. Id. at 86, 686 N.E.2d 981. As the court observed, quoting the motion judge with approval:
"Whether or not the plaintiffs ever went to the school to watch their daughter, they still had to pay a fee for her to register with the basketball team. On the other hand, even if the plaintiffs did not register their daughter to play on the team, the plaintiffs, along with any other member of the public, could have gone to the school and observed the basketball game without paying a fee."
Id.
*459 Our decision in Whooley is to the same effect. There, the plaintiff was injured at a State rink where she was watching her grandson play hockey. See Whooley, 57 Mass. App. Ct. at 909, 783 N.E.2d 461. A rental charge had been imposed for the hockey players' use of the rink, and the plaintiff had argued that this disqualified the defendants from relying on the recreational use statute. See id. at 910, 783 N.E.2d 461. Citing to Seich, we disagreed. We reasoned that because the plaintiff herself had not been charged a fee to watch her grandson play hockey, "she was no different from any other member of the public who could come in and watch." Id.
One other aspect of Seich and Whooley bears mention. For the recreational use statute to apply, the injured party has to be on the land for a recreational or other covered use; it is not enough that the party is there without charge. As the court in Seich observed, the plaintiff there did not dispute that, in going to watch her daughter play basketball, she herself was "engaged in a recreational pursuit." Seich, 426 Mass. at 85 n.4, 686 N.E.2d 981. In affirming the judgment that the town was entitled to the protections of the recreational use statute, the court did not merely rely on the plaintiffs' having conceded the issue. Rather, the court cited, with apparent approval, dicta from this court to the effect that watching others recreate is itself a form of recreation. See ibr.US_Case_Law.Schema.Case_Body:v1">id., quoting Catanzarite v. Springfield, 32 Mass. App. Ct. 967, 967, 592 N.E.2d 752 (1992) (noting that this court had "construed the term 'recreation' to include 'not only active pursuits [playing baseball and the like] ... but also passive pursuits, such as watching baseball, strolling in the park to see animals, flowers, the landscape architecture, or other sights, picnicking, and so forth' "). Similarly, in Whooley, we observed that the plaintiff there did not dispute that her going to watch her grandson play hockey itself constituted a recreational use. 57 Mass. App. Ct. at 910, 783 N.E.2d 461, citing Catanzarite, supra.[6]
It is undisputed that Gerante was not charged a fee to enter the Orange facility. Like any member of the public, she was welcome to come to the facility and watch the tournament games being played there for free. Accordingly, the factual context of this case is extremely close to those presented in Seich and Whooley. Indeed, as the plaintiffs forthrightly acknowledged at oral argument, *460 based on cases such as Seich and Whooley, the case law until recently *1035 seemed clear that someone in their position (that is, parents who had not paid an entrance fee to watch their child recreate), could not bring a negligence action for injuries sustained while doing so. In 2016, however, we issued Amaral v. Seekonk Grand Prix Corp., 89 Mass. App. Ct. 1, 44 N.E.3d 145 (2016), and the plaintiffs contend that that case provides a basis on which they can prevail.
The recreational facility in Amaral offered, for a fee, the use of "go-carts, miniature golf, bumper cars, and other similar activities." Id. at 2, 44 N.E.3d 145. The plaintiff was injured while she was standing behind a fence watching her children drive go-carts when another child drove a go-cart through the fence and struck her. In reversing the allowance of summary judgment in the defendant's favor, we focused on the particular role that the mother was playing on site and whether that made her a paying customer for purposes of the recreational use statute. Id. at 4, 44 N.E.3d 145. We emphasized that she had not entered the facility "for the sole purpose of watching others engage[ ] in a recreational activity." Id. Rather, the mother "accompanied [her] minor children, purchased their tickets, and remained to supervise them." Id. Essentially, we reasoned that someone who in effect was required to be at a commercial recreational facility to accompany a paying customer herself should be considered a paying customer, rather than someone recreating there out of the beneficence of the owner.[7] We observed that to allow such a facility to enjoy the protections of the recreational use statute under these circumstances "would undermine the very purpose of the statute: to encourage landowners to permit broad, public, free use of land for recreational purposes by limiting their obligations to lawful visitors under the common law." Id. at 4-5, 44 N.E.3d 145, quoting Ali v. Boston, 441 Mass. 233, 238, 804 N.E.2d 927 (2004).
The plaintiffs seek to paint their case as similar to Amaral. They argue that Gerante's role here went beyond that of mere spectator to include supervisory responsibilities. They also emphasize that, as in Amaral, the incident took place at a commercial recreational facility, not a municipal one or one run by a charitable enterprise.
As Amaral itself reveals, the boundary between a mere spectator *461 of a recreational event and someone whose presence there effectively was required for other purposes may not be an easy one to locate. That said, the role that Gerante played appears virtually the same as that served by the mother in Seich (and the grandmother in Whooley ).[8] To be sure, in opposition to summary judgment, Gerante submitted an affidavit averring that she "supervised" her son while at the game. She provided no detail of what that meant, and there is nothing before us to suggest that she was "supervising" her son's defending his dekhockey goal any more than the mother in Seich was supervising her daughter playing basketball. Where, as *1036 here, a parent was injured while -- without paying a fee -- watching her child play in an organized activity in which the players were under the charge of third-party coaches and referees, we do not view the parent's mere invocation of the term supervision as sufficient to stave off summary judgment. See Polaroid Corp. v. Rollins Envtl. Servs. (NJ), Inc., 416 Mass. 684, 696, 624 N.E.2d 959 (1993) ("bare assertions ... are not enough to withstand a well-pleaded motion for summary judgment"); Madsen v. Erwin, 395 Mass. 715, 719, 481 N.E.2d 1160 (1985) (adverse party "must set forth specific facts showing that there is a genuine issue for trial" in order to withstand motion for summary judgment).
Nor can the plaintiffs survive summary judgment merely by pointing out that 202 Sports operates a for-profit business. The statute applies to both public and private entities that allow members of the public to use their land for recreational and other covered uses for free. Anderson v. Springfield, 406 Mass. 632, 634, 549 N.E.2d 1127 (1990). As Amaral itself signifies, the operative question does not go to the nature of the entity, but whether the injured party should be considered a paying customer, or a member of the public recreating without charge. The plaintiffs have not made a sufficient showing on summary judgment to distinguish their case from Seich, and we therefore are bound to follow the same result.
Lest our holding be misinterpreted, we note that we do not rely on 202 Sports's reductionist claim that owners of recreational facilities of whatever stripe are automatically entitled to the protections of the statute if the injured spectator was not charged an entrance fee. Although an owner's status as a for-profit entity *462 does not disqualify it from making use of the statute, this does not mean that such status is irrelevant to whether the recreational use statute applies.
Judgment affirmed.

As discussed in note 3, infra, the judge also denied the plaintiffs' motion to add an additional defendant.

On the same day that 202 Sports moved to dismiss the complaint, the plaintiffs moved to add Leominster Dekhockey as a defendant. The proposed amended complaint alleged that Leominster Dekhockey was "responsible for the planning and scheduling of the" tournament held at 202 Sports, and that it "negligently failed to reasonably ensure that the site ... was kept in a reasonably safe condition." The docket indicates that the plaintiffs' motion to amend was heard at the same time as 202 Sports's motion to dismiss. The judge's memorandum of decision addressed only the liability of 202 Sports, concluding that that entity was protected from negligence claims by operation of G. L. c. 21, § 17C. However, a docket entry entered the same day that the memorandum of decision was issued, indicated that the motion to amend the complaint was denied, with the following summary explanation being offered:
"Based upon reasons set forth in this court's [m]emorandum of [d]ecision and [o]rder on [d]efendant's [m]otion to [d]ismiss, the addition of Leominster Dekhockey Center, Inc. as a defendant would be futile."
Although the plaintiffs nominally appealed both the dismissal of its existing complaint against 202 Sports and the denial of its motion to add Leominster Dekhockey as a defendant, its substantive arguments on appeal are limited to the liability of 202 Sports. Thus, there is no claim before us that Leominster Dekhockey could be liable even if 202 Sports were not.

In fact, the protections also apply to a broad array of uses beyond recreation. The pertinent language of the statute states as follows:
"Any person having an interest in land including the structures, buildings, and equipment attached to the land ... who lawfully permits the public to use such land for recreational, conservation, scientific, educational, environmental, ecological, research, religious, or charitable purposes without imposing a charge or fee therefor ... shall not be liable for personal injuries or property damage sustained by such members of the public ... while on said land in the absence of wilful, wanton, or reckless conduct by such person."
G. L. c. 21, § 17C(a ).

The plaintiffs characterize 202 Sports's assertion "that it was not financially benefiting in this situation [as] akin to suggesting that Mr. Housser was losing money by taking it from his left pocket and placing it in his right."

It remains true that "the [recreational use] statute does not define the term 'recreation' and ... our cases have not definitively addressed the extent to which it may include watching others engaged in a recreational activity." Amaral v. Seekonk Grand Prix Corp., 89 Mass. App. Ct. 1, 4, 44 N.E.3d 145 (2016).

In a footnote, we stated that "[n]otably, nothing in the summary judgment record suggests that the plaintiff could not have used the [ride] tickets herself." Amaral, 89 Mass. App. Ct. at 4 n.5, 44 N.E.3d 145. That observation signifies that the distinction between paying participants and mere spectators may not be clear.

Here, Gerante brought her son to his dekhockey game, while in Seich it is not clear whether the mother brought her daughter to the basketball game or arrived separately. Similarly, it is not clear whether the plaintiff in Whooley chauffeured her grandson to his hockey game or came separately. We do not view the cases as turning on the question of transportation.