SUPERIOR COURT 
 
 PATRICK LASELVA v. CITY OF BOSTON

 
 Docket:
 1984CV01583-C
 
 
 Dates:
 August 16, 2021
 
 
 Present:
 Robert B. Gordon Justice of the Superior Court
 
 
 County:
 SUFFOLK, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON DEFENDANT’S MOTION FOR SUMMARY JUDGMENT

 
 

 Plaintiff Patrick LaSelva (“LaSelva” or the “Plaintiff”) has brought a two-count Complaint against the City of Boston (“City” or the “Defendant”), charging it with negligence (Count I) and gross negligence (Count II) in connection with personal injuries he sustained while attending a burial ceremony at a City-owned cemetery. Presented for decision is the Defendant’s Motion for Summary Judgment, whereby the City seeks the dismissal of both tort claims. For the reasons which follow, the Defendant’s motion shall be ALLOWED.
BACKGROUND[1]
Fairview Cemetery is a public cemetery owned and operated by the City through its Parks and Recreation Department. Located in Hyde Park, Fairview is open to the public and sells rites of burial and related grave-opening and internment services. The City otherwise charges no fees to access the cemetery, and persons who attend funeral ceremonies at this facility incur no

---------------------------------

[1] The following facts are drawn from the parties’ jointly filed Superior Court Rule 9A(b)(5) Statement of Undisputed Material Facts.

-1-

 expenses of any kind to do so. Those fees that are assessed for burials and gravesite maintenance cover only a portion of the associated costs, and the City does not make a profit.
On February 24, 2018, LaSelva attended a funeral service for Margaret Lombardi at Fairview Cemetery (Lot 1581). Funeral arrangements were handled by the Alfred D. Thomas Funeral Home, which paid the grave-opening fees charged by the City for the Lombardi burial. LaSelva paid nothing to enter Fairview Cemetery or attend the funeral proceeding held there on this occasion.
For the Lombardi funeral, most attendees (including LaSelva) arrived at the cemetery following a mourner’s service conducted at the Most Precious Blood Church. A priest was present at the Lombardi gravesite, although the record does not reflect what role (if any) this clergy-person played in officiating the burial.
At the conclusion of the burial, at approximately noon, LaSelva was walking from the Lombardi cemetery plot toward his friend’s car. He was not on a path, but was instead walking about 20 feet from Lot 1581 atop another underground grave. As the Plaintiff describes what occurred, LaSelva stepped onto a “soft spot on the ground” and thereby created a deep hole. LaSelva’s “left foot and ankle [thereupon] went through the ground and [his] whole leg got caught by the hole.” LaSelva suffered injuries to his left foot, ankle, leg and back.
Plaintiff acknowledges that no hole was visible to him on this occasion until he stepped through the soft spot on the ground; and the evidence stands unrefuted that no one employed by the City with responsibility for inspecting and maintaining the area where LaSelva’s fall occurred was aware of any defect in this area prior to the fall. It is nonetheless Plaintiff’s contention that the City “failed to properly back fill the ground which allowed a ‘sink hole’ to form.” (Plaintiff’s Memorandum, at 2.) Plaintiff, however, points to no factual evidence to

-2-

 substantiate this summary allegation, the support for which consists in its entirety of a single sentence in a single interrogatory answer from LaSelva himself. Plaintiff thus cites no evidence of first-hand observations of City staff who maintain any part of Fairview Cemetery. Plaintiff cites no maintenance or other policies of the cemetery suggesting inadequate back-fill practices by its personnel. Plaintiff cites no evidence of other instances in which gravesite-servicing staff were known to have back-filled burial sites improperly and thereby allowed underground sink-holes to form. Plaintiff likewise submits no expert opinion to the effect that a failure by cemetery employees to sufficiently back-fill the gravesite where LaSelva fell more likely than not caused the underlying sink-hole. Plaintiff does not even cite an industry standard for the amount of back-filled dirt that should be placed above and around interred caskets to minimize the risk of sink-holes; nor does he allege that City personnel at Fairview failed to adhere to such a standard, or conform to prevailing practice, when they back-filled the particular gravesite where LaSelva fell. Plaintiff simply speculates that negligence on the part of cemetery staff was responsible for an inadequately back-filled grave, and that such negligence must have caused a sink-hole to form.
DISCUSSION
I.  LEGAL STANDARD
Summary judgment is properly allowed where there are no genuine issues of material fact, and where the record demonstrates that the moving party is entitled to judgment as a matter of law. See Mass. R. Civ. P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating both that there is no genuine issue of material fact on every relevant issue, and that it is entitled to judgment in accordance with the applicable law. See Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The

-3-

 moving party may satisfy this burden by submitting evidence negating an essential element of the non-moving party’s claim, or by demonstrating that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. See Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991). Once the moving party satisfies this threshold burden, the burden shifts to the party opposing summary judgment, who must then identify specific record evidence establishing the existence of a genuine issue of material fact warranting trial. See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991). “Conclusory statements, general denials, and factual allegations not based on personal knowledge are insufficient to avoid summary judgment.”  Madsen v. Erwin, 395 Mass. 715, 721 (1985) (citation and quotation omitted). 
II.  PLAINTIFF’S NEGLIGENCE CLAIMS
Plaintiff’s negligence claims in this case suffer two legal defects, each of which independently warrants the entry of summary judgment in favor of the City.
    A.  EVIDENCE OF NEGLIGENCE
A landowner is generally liable for injuries to invitees caused by a condition on his property “only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they [the invitees] will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.” Sarkisian v. Concept Restaurants, Inc., 471 Mass. 679, 682 (2015) (quoting Restatement (Second) of Torts § 343 (1965)). Premises liability thus ordinarily turns on whether the landowner had actual or constructive notice of an unsafe condition on his property. Sheehan v. Roche Bros. Supermarkets, 448 Mass. 780, 791 (2007).

-4-

In the case at bar, the undisputed evidence shows that, at the time of the accident, the subterranean sink-hole into which LaSelva fell was not known or even visible, and was thus not a condition of which City employees were or should have been aware. These facts would ordinarily defeat a negligence claim. See, e.g., Bernasconi v. Barre Hope Cemetery, 206 A.3d 720, 723-24 (Vt. 2019) (defendant entitled to summary judgment on negligence claim where plaintiff, who was injured after falling in a hole at defendant’s cemetery, offered no evidence that defendant “fail[ed] to adequately inspect the [cemetery] and discover the hole, or … faile[ed] to repair the hole after it had actual notice.”).  To establish liability, therefore, Plaintiff argues that it was the negligence of City employees themselves – viz., in failing to back-fill the underlying gravesite adequately – that caused the dangerous sink-hole to form. Although the Court agrees that negligent back-filling by City employees at the gravesite where LaSelva fell could properly supply the basis for premises liability in this case, there is simply no evidence of such negligence in the summary judgment record.
There is thus no first-hand evidence regarding the manner in which Fairview Cemetery personnel back-filled the gravesite where LaSelva fell. There is likewise no evidence of other particular instances or patterns of sink-holes at this cemetery such as might permit an inference of negligence on the part of City workers. There is no evidence of cemetery policies regarding normal back-fill expectations such as might suggest negligence on the part of gravesite staff.  Plaintiff likewise submits no expert opinion that a failure by cemetery employees to sufficiently back-fill the site where LaSelva fell more likely than not caused the underlying sink-hole. These are grave deficits. See Enrich v. Windmere Corp., 416 Mass. 83, 87 (1993) (“While a plaintiff need not show the exact cause of the accident or exclude all other possible causes, he must show

-5-

 that there is a greater probability than not that the [injuries] resulted from the defendant’s negligence.”).  
Indeed, Plaintiff does not even cite an industry standard for the amount of back-filled dirt that should ordinarily be placed above and around buried caskets to minimize the risk of sink-holes; nor does he allege that City personnel at Fairview failed to adhere to such a standard, or to conform to prevailing practice, when they back-filled the particular gravesite where LaSelva fell. In place of such probative evidence, Plaintiff simply conjectures that negligence on the part of Fairview’s cemetery workers must have caused the sink-hole. Such rank surmise, however, even when appearing in an interrogatory answer, will not suffice to overcome the City’s amply supported Motion for Summary Judgment. See Madsen, 395 Mass. at 721 (“Conclusory statements …and factual allegations not based on personal knowledge are insufficient to avoid summary judgment.”) (citation and quotation omitted).
This is not a case, and Plaintiff has not argued, that a sink-hole in a cemetery, without more, constitutes evidence of negligence under the doctrine of res ipsa loquitur. See Enrich, 416 Mass. at 88 (“This doctrine permits a trier of fact to draw an inference of negligence in the absence of a finding of a specific cause of the occurrence when an accident is of the kind that does not ordinarily happen unless the defendant was negligent in some respect and other responsible causes …are sufficiently eliminated by the evidence.”). The Court takes notice of the fact that sink-holes are commonplace in outdoor venues; as they are typically produced by an accumulation of rainwater above an underground cavity or loose soil, causing the earth to compact and sink under the weight. See Tae-Young Kwak et al., Experimental Assessment of the Relationship Between Rainfall Intensity and Sinkholes Caused by Damaged Sewer Pipes, 20 Nat. Hazards Earth Syst. Sci. 3343 (2020), https://doi.org/10.5194/nhess-20-3343-2020 (natural

-6-

 sinkholes occur when groundwater causes an underlying ground layer to dissolve, thereby forming an underground cavity that expands after rainfall); see also Bernasconi, 206 A.3d at 722 (explaining that holes “are particularly likely to develop” on cemetery grounds “after a hard rain because the rain causes the earth, which has been disturbed by the digging of graves, to collapse  . . . . [and that] lawnmowers can also cause holes, as can burrowing animals.”). Any number of environmental factors, therefore, entirely unrelated to human negligence, may contribute to soil erosion or subsiding at an outdoor gravesite, including the site’s particular soil type and clay content, the amount of area rainfall and flooding, groundwater levels at the cemetery, the number of other graves proximate to the subject site, and even the composition and degree of disintegration of the casket in the given grave. See, e.g., Kwak, supra (sinkholes may be induced by factors such as “sewage damage, inadvertent excavation, or groundwater lowering”); Haibat Ali & Jae-ho Choi, Risk Prediction of Sinkhole Occurrence for Different Subsurface Soil Profiles Due to Leakages from Underground Sewer and Water Pipelines, 12 Sustainability 310 (2020), https://doi.org/10.3390/su12010310 (“Factors such as groundwater extraction, construction in adjoining areas, and leakage from underground pipelines are the driving causes of sinkholes in urban areas.”).  LaSelva’s summary assertion that negligence of City workers more likely than not caused the sink-hole into which he fell, in addition to lacking factual support of its own, fails to account for any of these alternate (negligence-defeating) explanations of what occurred. 
Neither Plaintiff’s conclusory accusation of negligence, therefore, nor the doctrine of res ipsa loquitur, will spare his claims against the City from summary judgment. There is simply no probative evidence in the summary judgment record from which a reasonable inference can be drawn that negligence on the part of Fairview staff more likely than not caused Plaintiff’s

-7-

 injuries. See Mullins v. Pine Manor College, 389 Mass. 47, 58 (1983) (quoting McLaughlin v. Bernstein, 356 Mass. 219, 226 (1969)) (to prevail on negligence claim, evidence must establish that “there was a greater likelihood or probability that the harm complained of was due to causes for which the defendant was responsible than from any other cause”). Compare Kudlack v. Diocese of Rockville Ctr., 81 A.D.3d 694 (N.Y. App. Div. 2011) (defendant’s motion for summary judgment properly denied where deposition testimony indicated that subject sinkhole “appeared beneath [plaintiff] only a few days after the defendants’ employees, working at a relatively short distance from the scene of the accident, had excavated a grave”).
    B.  RECREATIONAL USE STATUTE
Even if the evidence somehow permitted a reasonable inference of negligence on the part of City employees at Fairview, the summary judgment record establishes that Plaintiff’s claims are barred by the Massachusetts Recreational Use Statute.
The Massachusetts Recreational Use Statute, G.L. c. 21, § 17C, provides in pertinent part as follows:
“Any person having an interest in land … who lawfully
  permits the public to use such land for recreational, 
conservation, scientific, educational, environmental, 
ecological, research, religious or charitable purposes
without a charge or fee therefor … shall not be liable
for personal injuries or property damage sustained by 
such members of the public … while on said land in
the absence of wilful, wanton, or reckless conduct by
such person.”
 The City is a “person” that may claim liability immunity under the statute “to the same extent as a private landowner.” Dunn v. City of Boston, 75 Mass. App. Ct. 556, 558 (2009).
To establish tort immunity under Section 17C, therefore, the Defendant must demonstrate each of four specific things:

-8-

(1) That the City owns the land on which the Plaintiff’s injury occurred;
(2)  That the Plaintiff was engaged in a “recreational,” “religious,” or other covered activity at the time of injury;
(3)  That the City did not assess a “charge or fee” for the Plaintiff’s use of the  land; and
(4)  That the Plaintiff’s injury was not caused by “wilful, wanton, or reckless conduct” on the part of the City.
Mass. G.L. c. 21, § 17C. See Sandler v. Commonwealth, 419 Mass. 334, 335-36 (1995). Although negligence claims do not ordinarily lend themselves to disposition by way of summary judgment, meeting the four requirements of the Recreational Use Statute is a recognized exception. See Patterson v. Christ Church, 85 Mass. App. Ct. 157, 159 (2014) (affirming entry of summary judgment pursuant to bar of Recreational Use Statute). This is such a case.
1. The City Owns Fairview Cemetery
The evidence is undisputed that the City owns Fairview Cemetery, the land on which the Plaintiff’s injury occurred. The first requirement of the Recreational Use Statute, therefore, is satisfied.
2.  LaSelva Was Engaged in a Religious and/or Recreational Activity    
To claim the immunity of the Recreational Use Statute, the law requires that the Plaintiff have been engaged in a sanctioned use of the property that serves at least one or more broadly identified social goods. See supra. “The original legislative purpose of the recreational use statute was to encourage landowners to give the public free access to their land for recreational purposes by protecting them from negligence claims if a member of the public were to be injured on the land.”  Murray v. Hudson, 472 Mass. 376, 380 (2015).  Courts have since construed

-9-

“recreation” under the statute expansively to include “not only . . . active pursuits (playing baseball and the like) … but also passive pursuits, such as watching baseball, strolling in the park to see animals, flowers, the landscape architecture, or other sights, picnicking, and so forth[.]” Catanzarite v. Springfield, 32 Mass. App. Ct. 967, 967 (1992) (emphasis in original). Accord Whooley v. Commonwealth, 57 Mass. App. Ct. 909, 910 (2003) (observing that spectators qualify as “recreational users” under Section 17C).
  In 1998, the statute was amended to add protections for landowners who allow free access to their land for activities in the realms of science, research, conservation, education, environmentalism, ecology, religion and charity. St. 1998, c. 268.  The unmistakable purpose of the 1998 amendment was to expand the scope of the statute in order to encourage landowners to make their property freely available for additional public uses perceived to promote societal advancement and community order, and to limit claims-making against these landowners by those persons who are the direct beneficiaries of such generosity. 
In the case at bar, the Court concludes that LaSelva’s attendance at an open-to-the-public funeral held at Fairview Cemetery qualifies for statutory coverage as both a “recreational” and “religious” use of the property. Regarding recreation, LaSelva was on these premises to bear witness to the public burial of Ms. Lombardi. He was not at the cemetery to transact business of any kind with the landowner, but was instead there as a spectator to the ritualized internment of a deceased friend’s remains. In this regard, LaSelva was no less a “recreational” user of the cemetery property than a person on site to observe children playing sports, bird-watch, or otherwise take in the sights of nature. See Catanzarite, 32 Mass. App. Ct. at 967; Cf. Dami-Hearl v. City of N. Adams, 75 Mass. App. Ct. 1113, at *1-2 (2009) (Rule 1:28 Decision) (noting that there was no evidence that plaintiff was permitted on grounds for “some purpose related to the

-10-

 ‘business’ of the cemetery,” and observing that “[v]isiting the historical Southern Cemetery to visit unspecified gravesites may very well be a recreational pursuit”). 
At the same time, the record makes clear that the Lombardi funeral which LaSelva attended consisted of a church service promptly followed by a burial ceremony at Fairview. The two-part funeral can only fairly be regarded as an integrated religious proceeding in which attending mourners both prayed for the departed in a house of worship and then collectively returned her remains to hallowed soil in a cemetery.[2] Whether or not the priest in attendance at this burial, or anyone else there, actually recited prayers to a deity is immaterial. The ceremonial internment of the decedent was in all events part of a group rite that can only be regarded as religious in nature. At least one court in the Commonwealth applying the Recreational Use Statute has recognized as much. See Hannus v. City of Lowell, 2017 WL 3166814, at *4-6 (Mass. Super. Ct. May 19, 2017) (Inge, J.) (holding that visiting gravesite was a covered “recreational” and “religious” use of property within meaning of Section 17: plaintiffs entered cemetery “in connection with the objectively recreational and/or religious activity of visiting Thorp’s sister’s gravestone to pray and talk with Thorp’s sister and to lay flowers and decorate her gravesite…. [T]hey were not there to meet with City or Cemetery officials; the record does not indicate they entered Edson Cemetery to conduct business with the Cemetery.”). 
For this reason, the second requirement of the Recreational Use Statute is satisfied on the summary judgment record. 

-----------------------------------------------

[2] The undersigned rejects the Plaintiff’s contention that the burial performed in Fairview Cemetery was a purely secular activity, separate and distinct from the religious service held at the church immediately prior to it. These two plainly complementary components of Ms. Lombardi’s funeral cannot be partitioned in this way. 

-11-

3.  The City Did Not Impose a “Charge or Fee” for
     LaSelva’s Use of Fairfield Cemetery
The undisputed evidence demonstrates that the City did not impose a “charge or fee” on LaSelva for his statutorily covered use of Fairfield Cemetery – that is, for his attendance at the Lombardi funeral event. LaSelva paid no fee to enter onto this property, paid no fee to attend the burial of his friend, and contributed no money toward the cemetery’s charges for grave-opening and internment.
Although Fairfield Cemetery concededly assesses gravesite-related charges that are paid by the funeral home (which presumably passes such costs on to the decedent’s survivors or estate), no such charges are paid by members of the public (like LaSelva) in consideration of their attendance at the burial proceeding. As set forth ante, the twin purposes of the Recreational Use Statute are to promote socially valued uses of property and to deny most tort claims-making to those persons who are the beneficiaries of such uses. The statute thus immunizes landowners from personal injury liability, but only as to those persons who are granted gratis use of their property for one of the enumerated approved purposes (in this case, attendance at a burial rite conducted in a public cemetery).
It is for this reason that Plaintiff’s emphasis on the fact that the City charges grave-opening and internment fees for burials performed at Fairview is off point. Such charges -- which are paid by unrelated third parties who do conduct business in the cemetery (like funeral homes) and not by members of the public who attend and spectate burial proceedings there (like LaSelva) -- simply do not implicate the Recreational Use Statute or its animating purposes. See Marcus v. Newton, 462 Mass. 148, 154-55 (2012) (when determining defendant’s immunity from negligence liability under Recreational Use Statute, “the issue is whether the landowner charges a fee for the particular use to which the plaintiff puts the land”) (emphasis added). That

-12-

 the landowner may charge other parties for different and clearly commercial uses of its property is of no consequence to the analysis.
Numerous Massachusetts cases addressed to analogous facts reinforce this reading of the Recreational Use Statute. See, e,g,, Patterson v. Christ Church in the City of Boston, 85 Mass. App. Ct. 157, 162 (2014) (affirming summary judgment based on Recreational Use Statute where, despite third party paying annual fee to defendant, plaintiffs “paid neither a direct nor an indirect fee” for services they attended); Gerante v. 202 Sports Complex, LLC, 95 Mass. App. Ct. 455, 461 (2019) (“[T]he operative question does not go to the nature of the entity, but to whether the injured party should be considered a paying customer, or a member of the public recreating without charge”). 
In Whooley v. Commonwealth, 57 Mass. App. 909 (2003), a spectator who paid no fee to sit in the stands and observe youth hockey being played at an ice rink was injured while doing so, and sued the state. This spectator was held subject to the immunity bar of the Recreational Use Statute, and her claim was rejected. Whooley, 57 Mass. App. Ct. at 909-10. The Court declared that, “even if the youth hockey group did pay a fee to play at the rink, the plaintiff’s claims against the Commonwealth would still be barred under the statute because she was not charged admission to the facility. Whether other ‘recreational users’ paid a fee for their own use of the rink at the time in question is not determinative of her claim. Rather, the issue is whether the plaintiff paid a fee to the owner of the facility in exchange for her use of the premises as a spectator.” Id. at 910. Similarly, in Seich v. Canton, 426 Mass. 84 (1997), a parent sued the Town of Canton when she fell on town property while attending her daughter’s basketball game. Although the plaintiff had paid a registration fee for her daughter’s participation in the basketball league, the Court concluded that it was “not an entrance fee for members of the public to use the

-13-

 property.” Seich, 426 Mass. at 85. In upholding summary judgment for the town under the Recreational Use Statute, the Court held that whether or not the plaintiff paid a registration fee for her daughter to play in the basketball league was immaterial to her own tort claim for injuries she sustained as a spectator since she, “along with any other member of the public, could have gone to the school and observed the basketball game without paying a fee[.]” Id. at 86. Compare Amaral v. Seekonk Grand Prix Corp., 89 Mass. App. Ct. 1, 4 (2016) (claims of “parent who accompanied minor children, purchased their tickets, and remained to supervise them” not barred by statute).
Like the non-paying spectators and patrons deemed covered by the Recreational Use Statute in Whooley and Seich, LaSelva paid no money to enter Fairview Cemetery and observe the Lombardi burial ceremony held there. The burial costs that were paid by the funeral home engaged by the decedent’s family thus cannot be considered a “charge or fee” assessed by the City within the meaning of the statute, because LaSelva did not pay them as the price for his own use of the cemetery. LaSelva was simply there to observe and, as in the cases cited above, he did so for free. For this reason, the Defendant has satisfied the third requirement of the Recreational Use Statute.  
4.  The City Engaged in No Conduct That 
      Was Wilful, Wanton or Reckless
The summary judgment record demonstrating that the City qualifies for the tort immunity conferred by the Recreational Use Statute, the Plaintiff’s claims will only survive the Defendant’s Rule 12(b) motion if the evidence permits a reasonable finding that the City’s conduct was “wilful, wanton, or reckless.” See G.L. c. 21, § 17C. There is no evidence that would permit such a finding.

-14-

As set forth ante, the record before the Court permits no non-speculative inference that the City was negligent at all in allowing a subterranean sink-hole to develop under a gravesite in Fairview Cemetery. By definition, therefore, the evidence will not suffice to clear the much higher hurdle of “wilful, wanton, or reckless” conduct. See Sandler, 419 Mass. at 337 (reckless conduct involves risks so pronounced that “compared to negligence, there is not just a difference in degree but also a difference in kind”); Manning v. Nobile, 411 Mass. 382, 387-88 (1991) (“Two characteristics of wilful, wanton, or reckless conduct distinguish it from negligence. First, the defendant must knowingly or intentionally disregard an unreasonable risk. Second, the risk, viewed prospectively, must entail a high degree of probability that substantial harm would result to the plaintiff”) (internal citations and quotations omitted).
In the present case, the very most the Plaintiff has alleged is that “[t]he City had employees whose duty it was to care for, maintain, inspect and repair the area where the Plaintiff’s fall occurred,” and that these employees’ “failure to properly back fill caused the defect which was the sink hole.” (Plaintiff’s Memorandum, at 7-8.) Even if this unsupported allegation could be credited, numerous reported cases have held that far more negligent behavior than that so ascribed to the City will not rise to the level of “wilful, wanton, or reckless” conduct. See, e.g., Sandler, 419 Mass. at 336 (defendant’s persistent failure to remedy known defects in bike tunnel did not constitute wilful, wanton, or reckless conduct); Moore v. Town of Billerica, 83 Mass. App. Ct. 729, 735 (2013) (“failure to extend the netting, erect a barrier, or post warning signs” to protect spectators from batted balls known to pose risk of serious injury held not wilful, wanton, or reckless); Whooley, 57 Mass. App. Ct. at 910 (failure to remove ice from walkway to spectator stands held not wilful, wanton, or reckless).

-15-

Accordingly, the summary judgment record reflects that the fourth and final requirement of the Recreational Use Statute – the absence of wilful, wanton or reckless conduct on the part of the City in allowing a sink-hole to form at Fairview Cemetery – is satisfied in this case.[3]
CONCLUSION AND ORDER
For all the foregoing reasons, the Defendant’s Motion for Summary Judgment shall be, and hereby is, ALLOWED.
SO ORDERED.

@/s/Robert B. Gordon Justice of the Superior Court

@August 16, 2021

----------------------------------------

[3] Indeed, at hearing, counsel for the Plaintiff conceded that he was no longer pressing the contention that City of Boston had committed negligence so extreme as to qualify as wilful, wanton or reckless conduct.

-16-

xxz